O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIA D. MEJIA; SALVADOR MELGOZA, MARIA GUADALUPE MELGOZA, <br><br>            Plaintiff, <br><br>    v. <br><br> CITY OF SAN BERNARDINO; DOES 1-10, INCLUSIVE, <br><br>            Defendants. | Case No. EDCV 11-00452 VAP (DTBx) <br><br> **ORDER GRANTING MOTION FOR SUMMARY JUDGMENT** <br><br> **[Motion filed on January 9, 2012]** |

Before the Court is a Motion for Summary Judgment ("Motion") filed by Defendants City of San Bernardino ("the City"), Officer Brad Grantz, Officer Kenneth Edwards, Officer Troy Forsythe, Officer Christopher Emon, Officer Carlos Gutierrez, Sergeant Dave Dillon, Sergeant Ray Rocha, Sergeant Stephen Lyter, and Chief Keith Kilmer (collectively, "Defendants").[1]  After considering the papers in support of, and opposition to, the Motion, and

---

[1]  Officers Grantz, Edwards, Forsythe, Emon, and Gutierrez, and Sergeants Dillon, Rocha, and Lyter are collectively the "Officer Defendants."

the arguments advanced at the March 5, 2012, hearing, the Court GRANTS Defendants' Motion.

## I.  PROCEDURAL HISTORY

Plaintiffs Maria D. Mejia, Salvador Melgoza, and Maria Guadalupe Melgoza (collectively, "Plaintiffs") filed their Complaint in this Court on March 16, 2011. (Doc. No. 1.)  On August 26, 2011, Plaintiffs filed their First Amended Complaint ("FAC"), asserting the following eleven claims arising out of the fatal shooting of Fernando Melgoza ("Decedent"):

1.  Unreasonable Search and Seizure – Detention under 42 U.S.C. § 1983 against the Officer Defendants;

2.  Unreasonable Search and Seizure – Excessive Force and Denial of Medical Care under 42 U.S.C. § 1983 against the Officer Defendants;

3.  Interference with Familial Relationship under 42 U.S.C. § 1983 against the Officer Defendants;

4.  Conspiracy to Violate Civil Rights under 42 U.S.C. §§ 1983, 1985 against the Officer Defendants;

5.  Due Process – Conspiracy to Cover Up under 42 U.S.C. §§ 1983, 1985 against the Officer Defendants and Kilmer;

6.  Municipal and Supervisory Liability for Unconstitutional Custom, Practice, or Policy,

1       under 42 U.S.C. § 1983 against Defendants City

2       and Kilmer;

3    7.   False Arrest / False Imprisonment against the

4       Officer Defendants and the City

5    8.   Battery against the Officer Defendants and City;

6    9.   Negligence against all Defendants

7    10.  Intentional Infliction of Emotional Distress

8       ("IIED") against the Officer Defendants and

9       City; and

10   11.  Violation of Bane Act, California Civil Code §

11       52.1 against the Officer Defendants and City.

12

13   On January 9, 2012, Defendants filed this Motion,

14 (Doc. No. 37), and the following documents in support:

15    1.   Statement of Undisputed Facts and Conclusions of

16       Law ("SUF");

17    2.   Declaration of Brandi Harper ("Harper Decl."),

18       and attached exhibits;

19    3.   Declaration of Officer Christopher Emon ("Emon

20       Decl.");

21    4.   Declaration of Officer Brad Grantz ("Grantz

22       Decl.");

23    5.   Declaration of Officer Troy Forsythe ("Forsythe

24       Decl.");

25    6.   Declaration of Officer Kenneth Edwards ("Edwards

26       Decl.");

27

28

7.   Declaration of Officer Carlos Gutierrez ("Gutierrez Decl.");

8.   Declaration of Sergeant Stephen Lyter ("Lyter Decl.");

9.   Declaration of Chief Keith Kilmer ("Kilmer Decl");

10.   Declaration of Sergeant Ray Rocha ("Rocha Decl."); and

11.   Declaration of Sergeant Dave Dillon ("Dillon Decl.").

(Doc. Nos. 38 – 49.)

On February 5, 2012, Plaintiffs filed their Opposition.  (Doc. No. 55.)  In support of their Opposition, Plaintiffs also filed a statement of genuine issues and the Declaration of Marjorie Barrios with the exhibits attached thereto.  (Doc. Nos. 57, 58.)  After the Court notified Plaintiffs' counsel of errors in the statement of genuine issues, Plaintiffs filed a corrected Statement of Genuine Issues ("SGI") on February 16, 2012, a supporting Declaration of Marjorie Barrios ("Barrios Declaration"), and exhibits attached to the Barrios Declaration.  (Doc. Nos. 78, 79.)

On February 13, 2012, Defendants filed their Reply. (Doc. No. 61.)  On February 22, 2012, Defendants filed their Response to Plaintiffs' SGI ("SGIR"), and another

4

Declaration of Brandi Harper ("Harper Declaration II") with additional exhibits.  (Doc. Nos. 71, 72.)

     The Court notes that both Plaintiffs' Opposition and Defendants' Motion failed to comply with the Court's Local Rules.  Specifically, Defendants' Motion totaled 32 pages, in violation of Local Rule 11-6, which limits briefs to 25 pages.  Moreover, all of Defendants' declarations are improper, as they are each signed "under penalty of perjury under the laws of the State of California . . . ."  (See Harper Decl. at 3; Emon Decl. at 4; Grantz Decl. at 5; Forsythe Decl. at 5; Edwards Decl. at 4; Gutierrez Decl. at 3; Lyter Decl. at 3; Kilmer Decl. at 8.)  Under 28 U.S.C. § 1746, these attestations are improper.  See 28 U.S.C. § 1746(2). Nevertheless, as Plaintiffs have not objected to the declarations on this basis, the Court has considered them.

     Similarly, the small font size in Plaintiffs' Opposition violates Local Rule 11-3.5.  And, as the Opposition is 25 pages in the improper font size, the Opposition actually exceeds 25 pages, in violation of Local Rule 11-6.  Additionally, Plaintiffs did not mark the deposition transcript excerpts in violation of Local Rule 32-1, nor did Plaintiffs number the pages sequentially, in violation of Local Rule 11-5.2.

1   The parties are cautioned that future documents filed
2   with the Court must comply with all of the Central
3   District's Local Rules; if they do not, the Court may
4   strike the noncompliant documents.

5

6                   **II.   FACTUAL BACKGROUND**

7   **A.   Uncontroverted Facts**

8        Both sides cite facts that are not relevant to
9   resolution of the Motion.   To the extent certain facts
10  are not mentioned in this Order, the Court has not relied
11  on them in reaching its decision.   Additionally, certain
12  of the parties' proposed facts are not supported
13  adequately by the cited evidence; as to those proposed
14  facts, the Court has considered and relied on the
15  underlying evidence and found facts supported by that
16  evidence, to the extent the evidence itself was
17  admissible.   The Court finds the following material facts
18  are supported adequately by admissible evidence and are
19  uncontroverted.   They are "admitted to exist without
20  controversy" for the purposes of these Motions.   L.R. 56-
21  3; see generally Fed. R. Civ. P. 56.

22

23       On May 17, 2010, Decedent lived at Consuelo Salazar's
24  residence, where he rented a bedroom.   (SUF ¶ 1; SGI ¶
25  1.)   Mrs. Salazar's husband and nine-year-old son lived
26  with her at the residence, sharing one bedroom.   (SUF ¶¶
27  1, 2; SGI ¶¶ 1,2.)   Ismael Flores ("Flores") and Rosa

28

Ybarra ("Ybarra") lived at Mrs. Salazar's residence as well, residing in the garage.  (SUF ¶ 2; SGI ¶ 2.)

Some time earlier that day, Decedent had become "disturbed."  (SUF ¶ 3; SGI ¶ 3.)  According to Flores and Ybarra, Decedent was "not himself" that day and was saying peculiar things to them.  (SUF ¶ 4; SGI ¶ 4.) Decedent told Flores and Ybarra that he needed a ride to his sister's house because he did not want anything "disgraceful" to happen in Salazar's house, and asked Flores to drive him there.  (SUF ¶¶ 4, 5; SGI ¶¶ 4,5.)[2] Sometime between 4:30 p.m. and 5:00 p.m. Flores took Decedent to his sister's house.  (SUF ¶ 6; SGI ¶ 6.) Decedent then walked back to Salazar's house, and told Flores and Ybarra that his sister would not permit him to enter her house.  (SUF ¶ 7; Ybarra Dep. 19:10-20:2.)

At an unspecified time after returning from his sister's house, Decedent went to his brother's house. (SUF ¶ 8; SGI ¶ 8.)  Sometime between 8:30 p.m. and 9:00 p.m., Decedent's brother, Salvador Melgoza ("Melgoza"), brought Decedent back to Salazar's house. (SUF ¶ 8; SGI ¶ 8.)

---

[2]   Plaintiffs do not dispute that Decedent requested Flores drive him to Decedent's sister's house; rather, they dispute why Decedent requested Flores take him. Accordingly, the Court deems the fact uncontroverted for purposes of this Motion.  See Fed. R. Civ. P. 56(e)(2); L.R. 56-3.

1    Around 11:30 p.m., Salazar, her husband, and her son
2  went to sleep in Salazar's bedroom.  (SUF ¶ 10; SGI
3  ¶ 10.)  When Salazar woke up to assist her husband, she
4  saw Decedent standing in the doorway of her bedroom,
5  holding a knife in his hand.  (SUF ¶¶ 10, 11; SGI ¶¶ 10,
6  11.)  Salazar knew she had locked her bedroom door before
7  going to sleep, and believed Decedent had broken the lock
8  with his knife.  (SUF ¶ 12; SGI ¶ 12.)

9

10    Decedent told Salazar, her son, and her husband that
11  there was someone outside their bedroom, and he refused
12  to leave.  (SUF ¶ 13; SGI ¶ 13.)[3]  Salazar called
13  Decedent's sister, who told Salazar to "leave him alone,
14  and if he continues, call the police."  (SGIR ¶ 14.)
15  Salazar then called Flores, who also told her to call the
16  police.  (SUF ¶ 15; SGI ¶ 15.)

17

18    After receiving Salazar's call, Flores went inside
19  the house to assist Salazar.  (SUF ¶ 16; SGI ¶ 16.)  Upon
20  entering Salazar's bedroom, Flores saw Decedent inside
21  the room, in a squatting position near the windows;
22  Decedent was holding two knives.  (SUF ¶ 17; SGI ¶ 17.)
23  Decedent told Flores to be careful because "they" were

24

25

26  _____

27    [3]  Plaintiffs dispute Defendants' fact, but do not
     offer facts that controvert the fact.  Accordingly, the
     Court deems the fact uncontroverted for purposes of this
28  Motion.  <u>See</u> Fed. R. Civ. P. 56(e)(2); L.R. 56-3.

1  breaking in; Decedent said he was going to kill "them."

2  (SUF ¶¶ 18, 19; SGI ¶¶ 18, 19.)

3

4  　　　On May 18, 2010, at approximately 2:00 a.m., San

5  Bernardino Police Department dispatch transmitted a radio

6  broadcast for officers to respond to Salazar's address,

7  and that the reporting party had reported a complaint of

8  a man with a knife.  (SUF ¶ 21.)[4]  Officers Grantz,

9  Forsythe, Emon, Edwards, and Gutierrez all heard the

10  dispatch and responded to Salazar's residence.  (SUF

11  ¶ 22; SGI ¶ 22.)  Upon arriving, the officers were met in

12  the driveway by the reporting party, Salazar, who exited

13  the house speaking in Spanish.  (SUF ¶¶ 23, 24; SGI

14  ¶¶ 23, 24.)

15

16  　　　Officer Gutierrez remained in the driveway speaking

17  with Salazar, while the other officers approached the

18  front door.  (SUF ¶ 25; SGI ¶ 25.)  As he and the other

19  officers approached the house, Officer Edwards heard the

20  sound of glass breaking.  (SUF ¶ 26; SGI ¶ 26.)

21

22  　　　Salazar told Officer Gutierrez that Decedent was

23  alone in the house, and was armed with a knife.  (SUF

24  ¶ 27; SGI ¶ 27.)  She continued, telling Officer

25

26  _____

27  　　　[4] Plaintiffs dispute Defendants' fact, but do not
offer facts that controvert the fact.  Accordingly, the
Court deems the fact uncontroverted for purposes of this

28  Motion.  See Fed. R. Civ. P. 56(e)(2); L.R. 56-3.

9

Gutierrez that Decedent had mental problems and took

medication.  (SUF ¶ 28; SGI ¶ 28.)  Salazar also told

Officer Gutierrez that Decedent said he was going to kill

everyone.  (SUF ¶ 28.)[5]  Officer Gutierrez relayed this

information to the other officers.  (SUF ¶ 29; SGI ¶ 29.)


     After Officer Gutierrez relayed the information to

the other officers, those officers entered Salazar's

house.  (SUF ¶ 30; SGI ¶ 30.)  Officer Grantz had

designated Officer Forsythe as the "less-than-lethal

officer," and, accordingly, Officer Forsythe had his

Taser out upon entering .  (SUF ¶ 31.)[6]


     Before the officers entered, however, Officer Grantz

gave commands in both English and Spanish that they were

from the police department, that they were entering the

house, and that anyone in the residence needed to make

the officers aware of his or her presence.  (SUF ¶ 32;

---

     [5]  Plaintiffs dispute Defendants' fact, but do not
offer facts that controvert the fact.  In his
declaration, Officer Gutierrez stated that Salazar
informed him that Decedent had "threatened to kill
everyone."  (Gutierrez Decl. ¶ 3.)  At his deposition,
however, Officer Gutierrez testified Salazar told him
that Decedent was "threatening to kill people."
(Gutierrez Dep. 6:13-20.)  Officer Gutierrez's statements
are consistent.  Accordingly, as Plaintiff has not
offered facts controverting Defendants' fact, the Court
deems the fact uncontroverted for purposes of this
Motion.  See Fed. R. Civ. P. 56(e)(2); L.R. 56-3.

     [6]  Plaintiffs dispute Defendants' fact, but do not
offer facts that controvert the fact.  Accordingly, the
Court deems the fact uncontroverted for purposes of this
Motion.  See Fed. R. Civ. P. 56(e)(2); L.R. 56-3.

1   SGI ¶ 32.)   The officers waited for a response; hearing

2   none, they began clearing the residence room-by-room.

3   (SUF ¶ 33; SGI ¶ 33.)

4

5   Officer Grantz approached the north bedroom door,

6   with Officer Emon behind him, Officer Forsythe at the

7   hallway entrance, and Officer Emon watching the south

8   bedroom door.   (SUF ¶ 34; SGI ¶ 34.)   Decedent struck

9   Officer Grantz as he entered the bedroom.[7]

10

11   _____

12   [7] Plaintiffs dispute whether or not Decedent struck
     Officer Grantz when the officer entered the bedroom.
13   Officers Grantz, Forsythe, and Emon, all state they
     observed Decedent striking Officer Grantz.  (See Emon
14   Decl. ¶ 6; Forsythe Decl. ¶ 6; Grantz Decl. ¶ 9.) On the
     other hand, Plaintiffs direct the Court to two pieces of
15   evidence they contend could lead a reasonable fact-finder
     to conclude Decedent did not strike Officer Grantz before
16   Officer Grantz shot him.  First, Plaintiffs rely on a
     photograph of Officer Grantz taken after the shooting,
17   and secondly they cite Officer Grantz's failure to
     request or receive medical aid for his injury.  (See SGI
18   ¶ 34.)  Plaintiffs' evidence does not, however,
     controvert Defendants' proffered fact that Decedent
19   struck Officer Grantz.  First, the photograph shows a
     faint but visible small, diagonal red mark on Officer
20   Grantz's forehead.  In Officer Edwards's Declaration he
     states that after the shooting he "noticed a diagonal red
21   mark on [Officer Grantz's] forehead that looked like he
     had been struck by something."  (Edwards Decl. ¶ 6.)
22   Plaintiffs offer no evidence indicating the mark in the
     photograph was caused by something other than Decedent
23   striking Officer Grantz.  Hence, rather than controvert
     Defendants' version of the events leading up to the
24   shooting, the photograph supports it as it substantiates
     Officer Grantz's statement that Decedent struck him as he
25   entered the bedroom.  Additionally, Plaintiffs' remaining
     evidence – that Officer Grantz did not seek or receive
26   medical aid for the injury – does not contradict
     Defendants' offered fact that Decedent struck Officer
27   Grantz; it shows only that the officer's injury was not
     severe enough that he either sought or received such care
28   for it.

                                    11

1    Immediately after Decedent struck Officer Grantz,

2  Officer Grantz fired several shots in Decedent's

3  direction.  (SUF ¶ 35.)[8]  Decedent fell, causing the door

4  to close; Officer Grantz saw the door move, and thought

5  Decedent was trying to pull the door open to come out

6  again.  (SUF ¶ 36; SGI ¶ 36.)[9]  Officer Grantz fired

7  another shot into the door approximately one second after

8  firing the first shots.  (SUF ¶ 36; SGI ¶ 36.)

9

10    Officers Forsythe and Emon pulled Officer Grantz

11  behind them, Emon believing Grantz had been stabbed by

12  the assailant.  (SUF ¶ 37, SGI ¶ 37.)  Officer Edwards

13  called out "shots fired" over his radio.  (SUF ¶ 38; SGI

14  ¶ 38.)  Officer Forsythe pushed open the door, and

15  Officers Forsythe and Emon saw Decedent on the bedroom

16  floor.  (SUF ¶ 39; SGI ¶ 39.)  The officers instructed

17  Decedent to show his hands, as one of them was tucked

18  underneath his body.  (SUF ¶ 39; SGI ¶ 39.)  Decedent

19  placed both hands on his lap.  (SUF ¶ 39; SGI ¶ 39.)

20  Officers Emon and Forsythe called for medical assistance

21  on their radios.  (SUF ¶ 40; SGI ¶ 40.)

22

23  _____

24    [8] Plaintiffs dispute Defendants' fact, but do not
    offer evidence that controverts it.  Accordingly, the

25  Court deems the fact uncontroverted for purposes of this
    Motion.  See Fed. R. Civ. P. 56(e)(2); L.R. 56-3.

26    [9] Plaintiffs dispute whether Grantz thought Decedent
    was going to pull the door open.  Plaintiffs offer no

27  evidence controverting Defendants' fact.  Accordingly,
    the Court deems the fact uncontroverted for purposes of

28  this Motion.  See Fed. R. Civ. P. 56(e)(2); L.R. 56-3.

1    Officers Emon and Grantz cleared the remainder of the

2    house and backyard. (SUF ¶ 41; SGI ¶ 41.)  Officers

3    Edwards and Forsythe moved Decedent from the bedroom to

4    the family room to allow more space for paramedics to

5    render medical aid. (SUF ¶ 41.)[10]  Officer Gutierrez

6    never entered Salazar's house that night. (SUF ¶ 49; SGI

7    ¶ 49.)

8

9    Sergeants Rocha, Lyter, and Dillon investigated the

10   shooting incident. (SUF ¶ 48; SGI ¶ 48.)  Chief Kilmer

11   retired shortly after the incident, and was not involved

12   in the shooting or subsequent investigation. (SUF ¶ 47;

13   SGI ¶ 47.)

14

15   The City requires all of its officers to complete the

16   state mandated training, as defined by the Commission on

17   Peace Officer Standards in Training, "P.O.S.T." (SUF

18   ¶ 51.)[11]  P.O.S.T. covers more than forty areas of

19   training, including "reporting, investigating,

20   documenting, and use of force / excessive force." (Id.)

21

22   _____

23   [10] Plaintiffs dispute why Officers Edwards and
     Forsythe moved Decedent, but do not offer any evidence
     controverting Defendants' stated reason for moving

24   Decedent; the cited deposition testimony (Grantz Dep. at
     36) was not included with the Opposition. Accordingly,

25   the Court deems the fact uncontroverted for purposes of
     this Motion. See Fed. R. Civ. P. 56(e)(2); L.R. 56-3.

26
     [11] Plaintiffs dispute Defendants' fact, but do not

27   offer facts that controvert the fact. Accordingly, the
     Court deems the fact uncontroverted for purposes of this

28   Motion. See Fed. R. Civ. P. 56(e)(2); L.R. 56-3.

### III.   LEGAL STANDARD

A motion for summary judgment shall be granted when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986).   The moving party must show that "under the governing law, there can be but one reasonable conclusion as to the verdict." <u>Anderson</u>, 477 U.S. at 250.

Generally, the burden is on the moving party to demonstrate that it is entitled to summary judgment. <u>Margolis v. Ryan</u>, 140 F.3d 850, 852 (9th Cir. 1998); <u>Retail Clerks Union Local 648 v. Hub Pharmacy, Inc.</u>, 707 F.2d 1030, 1033 (9th Cir. 1983).   The moving party bears the initial burden of identifying the elements of the claim or defense and evidence that it believes demonstrates the absence of an issue of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).

When the non-moving party has the burden at trial, however, the moving party need not produce evidence negating or disproving every essential element of the non-moving party's case.   <u>Celotex</u>, 477 U.S. at 325. Instead, the moving party's burden is met by pointing out there is an absence of evidence supporting the non-moving party's case.   <u>Id.</u>

The burden then shifts to the non-moving party to show that there is a genuine issue of material fact that must be resolved at trial.  Fed. R. Civ. P. 56(e); Celotex, 477 U.S. at 324; Anderson, 477 U.S. at 256.  The non-moving party must make an affirmative showing on all matters placed in issue by the motion as to which it has the burden of proof at trial.  Celotex, 477 U.S. at 322; Anderson, 477 U.S. at 252.  "This burden is not a light one.  The non-moving party must show more than the mere existence of a scintilla of evidence."  In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010) (citing Anderson, 477 U.S. at 252).  "The non-moving party must do more than show there is some 'metaphysical doubt' as to the material facts at issue."  In re Oracle, 627 F.3d at 387 (citing Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)).

A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  Anderson, 477 U.S. at 248.  In ruling on a motion for summary judgment, the Court construes the evidence in the light most favorable to the non-moving party.  Barlow v. Ground, 943 F.2d 1132, 1135 (9th Cir. 1991); T.W. Elec. Serv. Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630-31 (9th Cir. 1987).

1                          **IV. DISCUSSION**

2  **A.   Plaintiffs' First and Second Claims**

3         **1.   Standing**

4         In their first and second claims, Plaintiffs seek

5  relief under 42 U.S.C. § 1983 for Defendants' alleged

6  violation of Decedent's Fourth Amendment rights.[12]

7  "Fourth Amendment rights are personal rights which . . .

8  may not be vicariously asserted."  <u>Alderman v. United</u>

9  _____

10        [12] It is unclear from Defendants' Motion whether they
   are moving for summary judgment as to the denial of
11 medical care component of Plaintiffs' § 1983 claim.  The
   Ninth Circuit analyzes claims regarding deficient medical
12 care during and immediately following an arrest under the
   Fourth Amendment.  <u>See Tatum v. City and Cnty. of S.F.</u>,
13 441 F.3d 1090, 1098-99 (9th Cir. 2006) (explaining that
   while the Supreme Court has analyzed such claims under
14 the Due Process Clause of the Fourteenth Amendment in the
   past, it appears that the Fourth Amendment is the proper
15 authority following the decision in <u>Graham v. Connor</u>, 490
   U.S. 386 (1989)).  The Fourth Amendment requires law
16 enforcement officers to provide objectively reasonable
   post-arrest care to an apprehended suspect.  <u>Id.</u> at
17 1099.  Although the Ninth Circuit has not prescribed the
   contours of objectively reasonable post-arrest care, it
18 has made clear that "a police officer who promptly
   summons . . . necessary medical assistance has acted
19 reasonably for purposes of the Fourth Amendment[.]" <u>Id.</u>;
   <u>see also City of Revere v. Mass Gen. Hosp.</u>, 463 U.S. 239,
20 245 (1983) ("Whatever the standard may be, [the
   defendant] fulfilled its constitutional obligation by
21 seeing that [the apprehended person] was taken promptly
   to the hospital that provided the treatment necessary for
22 his injury.").  Here, the uncontroverted evidence
   indicates that immediately after securing Decedent,
23 Officers Emon and Forsythe called for medical assistance
   on their radios, and moved Decedent into an area where he
24 could receive medical aid.  Accordingly, as the officers
   promptly summoned medical care for Decedent, they acted
25 "reasonably for purposes of the Fourth Amendment[.]"
   <u>Tatum</u>, 441 F.3d at 1099.  And, as the officers acted
26 reasonably, Plaintiffs cannot maintain their claims based
   on a denial of medical care.  Thus, insofar as
27 Plaintiffs' § 1983 claim is based on a denial of medical
   care, that claim cannot withstand summary judgment, and
28 the Court GRANTS Defendants' Motion.

1   *States*, 394 U.S. 165, 174 (1969); see also United States

2   v. Struckman, 603 F.3d 731, 746 (9th Cir. 2010) (citing

3   Alderman).   The general rule is that only the person

4   whose Fourth Amendment rights were violated can sue to

5   vindicate those rights.   Moreland v. Las Vegas Metro.

6   Police Dep't, 159 F.3d 365, 369 (9th Cir. 1998).   In

7   Section 1983 actions, however, the survivors of a person

8   killed as a result of an officer's excessive use of force

9   may assert a Fourth Amendment claim on that person's

10  behalf if the relevant state's law authorizes a survival

11  action.   Id.

12

13      California's survival statute provides that "[a]

14  cause of action that survives the death of the person

15  entitled to commence an action or proceeding passes to

16  the decedent's successor in interest, subject to [the

17  California Probate Code] . . . and an action may be

18  commenced by the decedent's personal representative or,

19  if none, by the decedent's successor in interest."   Cal.

20  Code Civ. Proc. § 377.30.[13]   Further, California's Probate

21  _____

22      [13] Defendants cite to California Code of Civil
    Procedure section 377.60 in support of their argument.

23  Although some cases have noted Section 337.60's
    applicability in § 1983 claims based on Fourth Amendment

24  violations, see Moreland, 159 F.3d at 269, more recent
    case law indicates the applicable survival statute is

25  section 377.30, not section 377.60.   See Tatum v. City
    and Cnty. of S.F., 441 F.3d 1090, 1093 n.2 (9th Cir.

26  2006); Cotton v. City of Eureka, No. C 08-04386 SBA, 2010
    WL 5154945, at *3 (N.D. Cal. Dec. 14, 2010) (explaining

27  when Section 377.30 applies and when Section 377.60
    applies); accord Hayes v. Cnty. of San Diego, 638 F.3d

28                                          (continued...)

Code defines "personal representative" for purposes of section 377.30 as, _inter alia_, the executor or administrator of the estate.  _See_ _Arres v. City of Fresno_, No. CV F 10-1628 LJO SMS, 2011 WL 284971, at *7 (E.D. Cal. Jan. 26, 2011); _Estate of Garcia-Vasquez v. Cnty. of San Diego_, No. 06CV1322-LAB (LSP), 2008 WL 418913, at *5, n.5 (S.D. Cal. Sept. 9, 2008).

Plaintiffs' FAC states that Plaintiffs "have filed a probate action in [the] San Bernardino Superior Court . . . . seeking to have Plaintiff MEIJA [sic] appointed Administrator" of Decedent's Estate.  (FAC ¶ 17.)  More importantly, however, Plaintiffs attached as Exhibit H to their Opposition certified copies of a San Bernardino Superior Court Letter of Administration indicating that court appointed Plaintiff Mejia as the administrator of Decedent's estate.  (_See_ Doc. No. 58-1.)

Accordingly, as the administrator for Decedent's estate, Plaintiff Mejia has standing to pursue Decedent's claims for the alleged violations of his Fourth Amendment rights.  _Moreland_, 159 F.3d at 369.  Nevertheless,

---

[13](...continued) 688 (9th Cir.) opinion withdrawn on other grounds 658 F.3d 867 (9th Cir. 2011) (finding that the district court erred in relying on Section 377.60 to determine whether the plaintiffs had standing to assert a § 1983 claim on behalf of a survivor of a person killed as a result of excessive force, and holding that Section 377.30 is the applicable statute).

1  Plaintiffs have not demonstrated Plaintiffs Salvador

2  Melgoza or Maria Guadalupe Melgoza also have standing.

3  The Court therefore GRANTS Defendants' Motion as to

4  Plaintiffs Salvador and Maria Guadalupe Melgoza.

5

6      **2.  Qualified Immunity for Officer Grantz**

7      "[G]overnment officials performing discretionary

8  functions generally are shielded from liability for civil

9  damages insofar as their conduct does not violate clearly

10  established statutory or constitutional rights of which a

11  reasonable person would have known."  <u>Harlow v.</u>

12  <u>Fitzgerald</u>, 457 U.S. 800, 818 (1982).  A plaintiff need

13  not point to a case specifically on point establishing

14  the official action as unlawful, but he must establish

15  that in light of pre-existing law the unlawfulness of the

16  defendant's actions is apparent.  <u>Anderson v. Creighton</u>,

17  483 U.S. 635, 640 (1987).  "The contours of the right

18  must be sufficiently clear that a reasonable official

19  would understand that what he is doing violates that

20  right."  <u>Id.</u>

21

22      These issues, the existence of clearly established

23  law and whether the defendant acted reasonably in light

24  of the clearly established law, are questions of law.

25  <u>Elder v. Holloway</u>, 510 U.S. 510, 516 (1994); <u>Hunter v.</u>

26  <u>Bryant</u>, 502 U.S. 224, 228 (1991).  In <u>Harlow</u>, the Court

27  stated:

28

On summary judgment, the judge appropriately may determine, not only the currently applicable law, but whether that law was clearly established at the time an action occurred.  If the law at that time was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to "know" that the law forbade conduct not previously identified as unlawful . . . . If the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct.  Nevertheless, if the official pleading the defense claims extraordinary circumstances and can prove that he neither knew nor should have known of the relevant legal standard, the defense should be sustained.  But again, the defense would turn primarily on objective factors.

Harlow, 457 U.S. at 818-19.  If an officer's actions are objectively reasonable under the circumstances and in light of the clearly established law, then qualified immunity should be found.  Anderson, 483 U.S. at 641.  In a summary judgment context, to determine whether qualified immunity applies, courts

ask two questions: (1) whether, taking the facts in the light most favorable to the nonmoving party, the officers' conduct violated a constitutional right, and (2) whether the right was clearly established at the time of the alleged misconduct. See Saucier v. Katz, 533 U.S. 194, 200-01 (2001), overruled in part by Pearson v. Callahan, 555 U.S. 223 (2009). Either question may be addressed first, and if the answer to either is "no," then the officers cannot be held liable for damages. See Pearson, 555 U.S. at 236.

Glenn v. Wash. Cnty., __ F.3d __, 2011 WL 6760348, at *4 (9th Cir. 2011).

### 3.   Excessive Force by Officer Grantz

"A claim against law enforcement officers for excessive force is analyzed under the Fourth Amendment's 'objective reasonableness' standard."  Arpin v. Santa Clara Valley Trans. Agency, 261 F.3d 912, 921 (9th Cir. 2001) (citing Graham v. Connor, 490 U.S. 386, 388 (1989)).  "The Fourth Amendment requires police officers making an arrest to use only an amount of force that is objectively reasonable in light of the circumstances facing them."  Blankenhorn v. City of Orange, 485 F.3d 463, 477 (9th Cir. 2007) (citing Tennessee v. Garner, 471 U.S. 1, 7-8 (1985)).  "The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."  Arpin, 261 F.3d at 921 (quoting Graham, 490 U.S. at 396).  "To determine whether a specific use of force was reasonable, [courts] must balance 'the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing government interests at stake.'"  Blankenhorn, 485 F.3d at 477 (quoting Graham, 490 U.S. at 396).  "Relevant factors to this inquiry include, but are not limited to, 'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'"  Id.  "These factors, however, are not

exclusive." <u>Bryan v. McPherson</u>, 630 F.3d 805, 826 (9th
Cir. 2010).  Another factor is the availability of
alternative methods to effectuate an arrest or overcome
resistance.  <u>Smith v. City of Hemet</u>, 394 F.3d 689, 701-02
(9th Cir. 2005) (en banc); <u>Headwaters Forest Defense v.
Cnty. of Humboldt</u>, 240 F.3d 1185, 1204 (9th Cir. 2000),
<u>vacated on other grounds</u>, 534 U.S. 801 (2001) ("[P]olice
are required to consider what other tactics if any were
available to effect the arrest.").  The most important of
these factors is the threat posed by the suspect.  <u>City
of Hemet</u>, 394 F.3d at 702.  "A simple statement by an
officer that he fears for his safety or the safety of
others is not enough; there must be objective factors to
justify such a concern."  <u>Bryan</u>, 630 F.3d at 826
(citation and internal quotations omitted).

     Additionally, where it is or should be apparent that
a person is emotionally or mentally unstable, that is a
factor that must be considered in determining the
reasonableness of the force employed.  <u>See</u> <u>Drummond v.
City of Anaheim</u>, 343 F.3d 1052, 1058 (9th Cir. 2003).
The Ninth Circuit has not, however, "adopt[ed] a per se
rule establishing two different classifications of
suspects: mentally disabled persons and serious
criminals." <u>Deorle v. Rutherford</u>, 272 F.3d 1272, 1283
(9th Cir. 2001).

1    When the excessive force used is deadly force, it

2    "satisfies Fourth Amendment standards '[w]here the

3    officer has probable cause to believe that the suspect

4    poses a threat of serious physical harm, either to the

5    officer or to others.'"   Blanford v. Sacramento Cnty.,

6    406 F.3d 1110, 1115 (9th Cir. 2005) (quoting Garner, 471

7    U.S. at 11); Price v. Sery, 513 F.3d 962, 970 (9th Cir.

8    2008) ("'While the use of 'force' is reasonable under the

9    Fourth Amendment if it would seem justified to a

10   reasonable police officer in light of the surrounding

11   circumstances, the use of 'deadly force' is only

12   justified if the officer has probable cause to believe

13   that a suspect poses a threat of serious physical harm to

14   the officer or others,' we were specifying the kind of

15   surrounding circumstances that uniquely justify the use

16   of deadly force-a threat of serious physical harm or

17   worse." (citing Fikes v. Cleghorn, 47 F.3d 1011, 1014 n.2

18   (9th Cir. 1995))).   "The use of 'probable cause' is . . .

19   synonymous with 'reasonable belief,' and the use of

20   deadly force is tied to the nature of the threat, not to

21   the quantum of evidence required to believe in it."

22   Price, 513 F.3d at 970.   Additionally, "[a] reasonable

23   use of deadly force encompasses a range of conduct, and

24   the availability of less intrusive alternatives will not

25   render conduct unreasonable."   Wilkinson v. Torres, 610

26   F.3d 546, 551 (9th Cir. 2010).

27

28

1          In <u>Garner</u>, the Supreme Court explained that although

2     it is unreasonable to apprehend an unarmed, nondangerous

3     suspect by killing him, "[w]here the officer has probable

4     cause to believe that the suspect poses a threat of

5     serious physical harm, either to the officers or to

6     others, it is not constitutionally unreasonable to

7     prevent escape by using deadly force [and] if the suspect

8     threatens the officer with a weapon or there is probable

9     cause to believe that he has committed a crime involving

10    the infliction or threatened infliction of serious

11    physical harm, deadly force may be used if necessary to

12    prevent escape, and, if, where feasible, some warning has

13    been given."   471 U.S. at 11-12.

14

15         Here, the relevant facts are uncontroverted.   At the

16    time the officers entered the house, Officer Gutierrez

17    had informed them that based on information from Mrs.

18    Salazar, Decedent was inside the house, was armed with at

19    least one knife, and had threatened to kill "everyone."

20    Upon entering, the officers announced their presence, but

21    Decedent failed to respond.   Then, when Officer Grantz

22    entered the bedroom, Decedent struck him with an unknown

23    object.   Given the totality of evidence, Officer Grantz

24    had a "reasonable belief" that Decedent "pose[d] a threat

25    of serious physical harm to [him]" and the other

26    officers.   <u>Price</u>, 513 F.3d at 970.

27

28

1    The Ninth Circuit has held that "where a suspect
2 threatens an officer with a weapon such as a gun or a
3 knife, the officer is justified in using deadly force."
4 City of Hemet, 394 F.3d at 704.  Here, Decedent did not
5 merely threaten Officer Grantz, he struck the officer
6 with what was believed to be a knife, thus presenting a
7 more significant threat to the officers.  Accordingly,
8 Officer Grantz was justified in using deadly force.
9 Indeed, the threat Decedent posed to the officers was
10 greater here than in other cases where the Ninth Circuit
11 has concluded the force was reasonable as a matter of
12 law.  See Sandberg v. City of Torrance, No. 10-55608,
13 2011 WL 5154229, at *2 (9th Cir. Nov. 1, 2011) (finding
14 officers' use of deadly force reasonable as a matter of
15 law where suicidal decedent brandished a knife and
16 charged at officers); Billington v. Smith, 292 F.3d 1177,
17 1185 (9th Cir. 2002) (holding that deadly force was
18 justified where a suspect violently resisted arrest,
19 physically attacked the officer, and grabbed the
20 officer's gun); Reynolds v. County of San Diego, 84 F.3d
21 1162, 1168 (9th Cir. 1996) (holding that deadly force was
22 reasonable where a suspect, who had been behaving
23 erratically, swung a knife at an officer); Scott v.
24 Henrich, 39 F.3d 912, 914-15 (9th Cir. 1994) (suggesting
25 that the use of deadly force is objectively reasonable
26 where a suspect points a gun at officers); Garcia v.
27 United States, 826 F.2d 806, 812 (9th Cir. 1987) (holding
28

1  that deadly force was reasonable where the plaintiff

2  attacked a border patrol agent with a rock and stick).

3  As Officer Grantz's use of force was objectively

4  reasonable as a matter of law, Plaintiffs cannot maintain

5  their excessive force claim.[14]

6

7      The Court therefore GRANTS Defendants' Motion as to

8  Plaintiff's First and Second Claims for violations of

9  Decedent's Fourth Amendment rights.[15]

10

11 **D.   Plaintiffs' Claims Against Defendants Kilmer,**

12 **Edwards, Forsythe, Emon, Gutierrez, Dillon, Rocha,**

13 **and Lyter**

14     Defendants also move for summary judgment as to all

15 individual Defendants other than Officer Grantz.  First,

16 as to Chief Kilmer, the uncontroverted facts demonstrate

17 he had no involvement in the shooting or subsequent

18

19 ─────────────

   [14]   To the extent Plaintiffs argue the officers used
20 excessive force unreasonably because they should have
   considered less intrusive alternatives, that argument
21 lacks merit.  See Scott v. Henrich, 39 F.3d 912, 915 (9th
   Cir. 1994) ("[A]s the text of the Fourth Amendment
22 indicates, the appropriate inquiry is whether the
   officers acted reasonably, not whether they had less
23 intrusive alternatives available to them." (citing
   Illinois v. Lafayette, 462 U.S. 640, 647 (1983); United
24 States v. Martinez-Fuerte, 428 U.S. 543, 556-57 n.12
   (1976))).

25
   [15]   As there is no constitutional violation, the
26 Court need not address whether Officer Grantz or the
   other officers are entitled to qualified immunity.
27 Glenn, 2011 WL 6760348, at *4 (holding that if there is
   no constitutional violation, courts need not continue
28 with the qualified immunity analysis).

1   investigation.  Accordingly, Defendants contend he is a

2   "duplicative defendant" as Plaintiffs are already suing

3   the City of San Bernardino.  (Mot. at 16.)   In support,

4   Defendants rely on <u>Kentucky v. Graham</u>, 473 U.S. 159

5   (1985).   There, the Court discussed the distinction

6   between suing a governmental official in his individual

7   versus official capacity.   The Court did not address

8   "duplicative defendants."   <u>Graham</u> therefore is

9   inapposite.   Nevertheless, as the Court grants

10   Defendants' Motion as to all of Plaintiffs' claims on

11   separate grounds, Defendants' argument as to Chief Kilmer

12   is moot.

13

14       The uncontroverted facts show that the only

15   involvement of Sergeants Dillon, Lyter, and Rocha was

16   their investigation after the shooting.   Defendants

17   contend Plaintiffs have no claim alleging, or evidence

18   indicating, those officers' actions violated State or

19   Federal law.   (Mot. at 16.)   Plaintiffs' only claim in

20   their FAC that could be construed as directed to these

21   officers is their negligence claim.   In that claim,

22   Plaintiffs contend the "Officer Defendants," including

23   Sergeants Dillon, Lyter, and Rocha, were negligent in

24   their handling of evidence and witnesses.   (FAC ¶ 85(i).)

25   Nevertheless, Plaintiffs have not offered any evidence

26   demonstrating these officers were negligent.

27   Accordingly, Defendants have demonstrated there is an

28

27

absence of evidence supporting Plaintiffs' claims against
Sergeants Dillon, Lyter, and Rocha.  <u>Celotex</u>, 477 U.S. at
325.  As the burden shifts to Plaintiffs, and Plaintiffs
have not demonstrated there is a triable issue of fact as
to their claims against these officers, Plaintiffs have
not satisfied their burden.  <u>Celotex</u>, 477 U.S. at 324.
The Court therefore GRANTS Defendants' Motion as to
Sergeants Dillon, Lyter, and Rocha.

     Defendants also seek summary judgment as to
Plaintiffs' claims against Officers Emon, Edwards,
Forsythe, and Gutierrez, as none of those officers had
any "personal involvement in the actual shooting."  (Mot.
at 16.)  "[I]ndividual liability under § 1983 arises only
upon a showing of personal participation by the
defendant."  <u>Avalos v. Baca</u>, 596 F.3d 583, 587 n.3 (9th
Cir. 2010) (citing <u>Taylor v. List</u>, 880 F.2d 1040, 1045
(9th Cir. 1989) and <u>Fayle v. Stapley</u>, 607 F.2d 858, 862
(9th Cir. 1979)).  The uncontroverted evidence
demonstrates that these officers did not participate in
the alleged deprivation of Plaintiffs' rights; <u>i.e.</u>, the
use of excessive force by Officer Grantz.

     Plaintiffs respond, contending liability under § 1983
extends "to those who perform functions 'integral' to an
unlawful search, even if their individual actions do not
themselves rise to the level of a constitutional

violation."  (Opp'n at 30.)  Plaintiffs provide an
accurate statement of the law in this Circuit.  <u>See</u> <u>Boyd</u>
<u>v. Benton Cnty.</u>, 374 F.3d 773, 779-80 (9th Cir. 2004).
Plaintiffs do not explain, however, how the actions of
Officers Emon, Edwards, Forsythe, and Gutierrez were
"integral" to the shooting here.  Accordingly, the Court
GRANTS Defendants' Motion as to these officers.

**E.   Plaintiffs' <u>Monell</u> Claim**

    **a.   Policies, Customs, and Procedures**

    In their FAC, Plaintiffs assert a <u>Monell</u>[16] claim
based on: (1) the City's failure to train officers
adequately; and (2) numerous generalized policies,
procedures, and customs that Plaintiffs contend
contributed to Officer Grantz using excessive force
against Decedent.  (<u>See</u> FAC ¶ 62).  Defendants move for
summary judgment as to this claim, attacking certain of
the policies as pled in Plaintiffs' FAC.  In Plaintiffs'
Opposition, they list the specific "policies" at issue,
which pertain to barricaded, mentally ill persons;
specifically: the custom not to call the "SWAT" team; the
custom not to use tear gas; the custom not to attempt to
contact the person by telephone; the custom not to use
counseling resources to intervene; and the custom not to
use less-than-lethal force.  (Opp'n at 12-14.)

---

    [16] <u>Monell v. Dep't of Soc. Serv.</u>, 436 U.S. 658
(1978).

1  Plaintiffs contend these policies constitute deliberate
2  indifference to those with mental illnesses.

3

4      The parties' arguments notwithstanding, the Court
5  need not resolve whether these policies constitute
6  deliberate indifference to those with mental illnesses.
7  The Ninth Circuit has held that

8

9      In order to establish liability for governmental
        entities under Monell, a plaintiff must prove (1)
10      that [the plaintiff] possessed a constitutional
        right of which [s]he was deprived; (2) that the
11      municipality had a policy; (3) that this policy
        amounts to deliberate indifference to the
12      plaintiff's constitutional right; and, (4) that
        the policy is the moving force behind the
13      constitutional violation.

14  Dougherty v. City of Covina, 654 F.3d 892, 900 (9th Cir.
15  2011) (citation and internal quotations omitted)
16  (alterations in original).  Here, as set forth in Section
17  IV.A., supra, Plaintiffs cannot maintain their claims
18  that Defendants deprived Decedent of a constitutional
19  right.  Hence, Plaintiffs cannot satisfy the first
20  element of proving their Monell claim.  The Court
21  therefore GRANTS Defendants' Motion as to Plaintiffs'
22  Monell claim.

23

24  **F.   Plaintiffs' Conspiracy Claims Under 42 U.S.C. §§**
25       **1983, 1985**
26      Defendants also move for summary judgment as to
27  Plaintiffs' conspiracy claims under 42 U.S.C. §§ 1983 and
28

1985.  To establish a claim for conspiracy under § 1983, a plaintiff "must show an agreement or meeting of the minds to violate constitutional rights."  <u>Franklin v. Fox</u>, 312 F.3d 423, 441 (9th Cir. 2002).  Defendants argue no evidence exists supporting Plaintiffs' conspiracy claim.  (<u>See</u> Mot. at 26.)  Defendants are correct.  Here, Plaintiffs have not established a constitutional violation or offered any evidence demonstrating there is a triable issue of material fact as to their conspiracy claim.  Accordingly, summary judgment on this claim is proper.  <u>Celotex</u>, 477 U.S. at 324-25.

Defendants also contend Plaintiffs cannot establish a conspiracy in violation of 42 U.S.C. § 1985.  To establish a conspiracy in violation of § 1985(3) (the only section potentially applicable here), the plaintiff must show that there was a conspiracy motivated by racial or class-based discriminatory animus.  <u>Sever v. Alaska Pulp Corp.</u>, 978 F.2d 1529, 1536 (9th Cir. 1992). Defendants again argue no evidence exists supporting this claim.  Defendants are correct; there is nothing in the record indicating any of Defendants' actions were based on a race or class-based discriminatory animus. Accordingly, summary judgment on this claim is proper as well.

1      The Court therefore GRANTS Defendants' Motion as to
2  these claims.

3

4  **G.   Plaintiffs' "False Arrest / False Imprisonment" Claim**

5      Defendants move for summary judgment as to
6  Plaintiffs' false arrest claim, contending that when
7  Decedent brandished the knife in front of Salazar, her
8  family, Flores, and Ybarra, Decedent committed a
9  misdemeanor in violation of California Penal Code section
10  417(a)(1).   And, this misdemeanor provided officers with
11  probable cause to enter, detain, and arrest Decedent.
12  (Mot. at 27.)

13

14      Under California Penal Code section 847(b), officers
15  acting within the scope of their authority are immune
16  from false arrest or false imprisonment claims if the
17  "arrest was lawful, or the peace officer, at the time of
18  the arrest, had reasonable cause to believe the arrest
19  was lawful."   Cal. Penal Code § 847(b)(1).   "'A
20  warrantless arrest by a peace officer for a misdemeanor
21  is lawful only if the officer has reasonable cause to
22  believe the misdemeanor was committed in the officer's
23  presence.'"   Arpin v. Santa Clara Valley Trasnp. Agency,
24  261 F.3d 912, 920 (9th Cir. 2001) (quoting Johanson v.
25  Dept. of Motor Veh., 36 Cal. App. 4th 1209, 1216 (1995)).
26  The "presence" limitation requires that "the crime must

27

28

be apparent to the officer's senses."  <u>People v. Bloom</u>,
185 Cal. App. 4th 1496, 1501 (2010).

     Here, the radio dispatcher communicated to the
officers before they arrived at Salazar's house that
there was someone inside brandishing a knife.
Additionally, when Officer Gutierrez spoke with Salazar,
she told him that Decedent was alone in the house, and
was armed with a knife.  Although the dispatcher and
Salazar communicated facts to the officers indicating
Decedent was brandishing a weapon, Defendants offer no
evidence demonstrating the crime was apparent to the
officers' senses.  Accordingly, Defendants' argument that
they cannot be liable for false arrest because Decedent
committed a misdemeanor lacks merit.

     Nevertheless, Plaintiffs' claims are barred under
California Welfare and Institutions Code section 5278
("Section 5278"), which provides that a person authorized
to detain another under section 5150 of that code "shall
not be held either criminally or civilly liable for
exercising this authority in accordance with the law."
"Under section 5150, an officer may detain any person the
officer determines, "'as a result of mental disorder, is
a danger to others, or to himself or herself, or gravely
disabled.'"  <u>Bias v. Moynihan</u>, 508 F.3d 1212, 1220 (9th
Cir. 2007) (quoting Cal. Welf. & Inst. Code § 5150).  The

1   officer's determination must be based on probable cause,
2   which exists "under section 5150 if facts are known to
3   the officer 'that would lead a person of ordinary care
4   and prudence to believe, or to entertain a strong
5   suspicion, that the person detained is mentally
6   disordered and is a danger to himself or herself.'"   Id.
7   (quoting People v. Triplett, 144 Cal. App. 3d 283, 287-88
8   (1983)).
9
10      Here, the uncontroverted facts demonstrate the radio
11  dispatcher communicated to the officers before they
12  arrived at Salazar's house that there was someone inside
13  brandishing a knife; upon their arrival, Salazar told the
14  officers that Decedent had mental problems and took
15  medication; and Decedent stated he was going to kill
16  "everyone."   Under these facts, the officers at the scene
17  were reasonably prudent in believing or entertaining a
18  strong suspicion that Decedent was mentally disordered
19  and a danger to himself or others.   Bias, 508 F.3d at
20  1220.   Hence, under Section 5278, the officers "shall not
21  be held either criminally or civilly liable for
22  exercising this authority in accordance with the law."
23  See id. at 1221 (finding officers not liable for false
24  arrest where there was probable cause to detain the
25  plaintiff under section 5150).
26
27
28
                          34

1    Thus, Plaintiffs cannot maintain their false arrest

2  claim, as it is barred by Section 5278.  The Court

3  therefore GRANTS Defendants' Motion as to this claim.

4

5  **H.   Plaintiffs' Battery Claim**

6    Defendants move for summary judgment on Plaintiffs'

7  battery claim, contending that Officer Grantz's use of

8  force was reasonable as a matter of law.  (Mot. at 27-

9  28.)  In California a police officer "may use reasonable

10 force to make an arrest, prevent escape or overcome

11 resistance, and need not desist in the face of

12 resistance."  Edson v. City of Anaheim, 63 Cal. App. 4th

13 1269, 1272-73 (citing Cal. Penal Code § 835a).  "By

14 definition then, a prima facie battery is not established

15 unless and until plaintiff proves unreasonable force was

16 used."  Id. at 1273.  Here, as discussed above, the use

17 of force was reasonable as a matter of law.

18

19    Accordingly, as Plaintiffs cannot make the requisite

20 showing that the force used was unreasonable, the Court

21 GRANTS Defendants' Motion as to this claim.

22

23 **I.   Plaintiffs' Negligence Claim**

24    Defendants move for summary judgment on Plaintiffs'

25 negligence claim, contending that Officer Grantz's use of

26 force was reasonable as a matter of law.  (Mot. at 27-

27 28.)  As with their argument against Plaintiffs' battery

28

1  claim, Defendants' argument is premised on the

2  reasonableness of Officer Grantz's use of force upon

3  Decedent.   And, as discussed above, Officer Grantz's

4  actions were reasonable as a matter of law.   Accordingly,

5  the Court GRANTS Defendants' Motion as to this claim.

6

7  **J.   Plaintiffs' IIED Claim**

8       In California, the elements of an IIED claim are: (1)

9  extreme and outrageous conduct by the defendant with the

10 intention of causing, or reckless disregard of the

11 probability of causing, emotional distress; (2) the

12 severe or extreme emotional distress suffered by that

13 plaintiff; and (3) actual and proximate causation of the

14 emotional distress by defendant's outrageous conduct.

15 Corales v. Bennett, 567 F.3d 554, 571 (9th Cir. 2009)

16 (citations and internal quotations omitted).   Defendants

17 contend Plaintiffs cannot maintain their claim because

18 Defendants' conduct was not "extreme, unreasonable and

19 outrageous" as a matter of law.   (Mot. at 30.)   Here,

20 Officer Grantz's actions were reasonable as a matter of

21 law.   Accordingly, Plaintiffs cannot establish Defendants

22 engaged in "extreme and outrageous conduct."   See Long v.

23 City & Cnty of Honolulu, 511 F.3d 901, 908 (9th Cir.

24 2007) (holding that where an officer's actions in fatally

25 shooting a criminal suspect were reasonable as a matter

26 of law, that officer's behavior could not be considered

27 "outrageous" conduct for purposes of the plaintiff's

28

1    intential infliction of emotional distress claim).  The

2    Court therefore GRANTS Defendants' Motion as to this

3    claim.

4

5    **K.   Plaintiffs' "Bane Act" Claim**

6         In their FAC, Plaintiffs' Eleventh Claim for Relief

7    is for "Violation of Bane Act (Cal. Civil Code § 51.7 and

8    California Common Law)."  (FAC at 19:7-10.)  The Bane Act

9    is not codified in Section 51.7, however; it is found in

10   Section 52.1.  See Venegas v. Cnty. of L.A., 32 Cal. 4th

11   820, 845-46 (2004) (Baxter, J. concurring) (discussing

12   the history and enactment of Sections 51.7 ("Ralph Civil

13   Rights Act") and 52.1 ("Tom Bane Civil Rights Act")).  In

14   both Defendants' Motion and Plaintiffs' Opposition, the

15   parties dispute whether Plaintiffs have satisfied the

16   requirements of Section 51.7; neither side discusses

17   Section 52.1.  (See Mot. at 30-31; Opp'n at 29-30.)

18   Additionally, Defendants' Motion quoted Section 51.7 in

19   their argument (see Mot. at 31); if this were not the

20   statute Plaintiffs intended to rely upon as the basis for

21   their claim, it stands to reason they would have pointed

22   that out in their Opposition.  Finally, in arguing

23   against Defendants' Motion, Plaintiffs' Opposition cites

24   to Section 51(e)(1), which is relevant for purposes of

25   Section 51.7 (as discussed below), but not for Section

26

27

28

52.1.[17]  Accordingly, the Court construes Plaintiffs'
Eleventh Claim as one brought under Section 51.7, not
Section 52.1.

Section 51.7 provides that:

> All persons within the jurisdiction of this state
> have the right to be free from any violence, or
> intimidation by threat of violence, committed
> against their persons or property because of
> political affiliation, or on account of any
> characteristic listed or defined in subdivision
> (b) or (e) of Section 51, or position in a labor
> dispute, or because another person perceives them
> to have one or more of those characteristics.

Cal. Civ. Code § 51.7(a).  Subdivision (e) of Section 51
includes persons with "any mental or physical disability
as defined in Sections 12926 and 12926.1 of the
Government Code."  Cal. Civ. Code § 51(e)(1).  In turn,
section 12926 of the Government Code, defines "mental
disability" as having any mental condition that limits a
major life activity.  Cal. Gov. Code § 12926(j)(1).
Defendants contend Plaintiffs offer no evidence that
Decedent falls within the definition of a person with a
protected characteristic.  (Mot. at 31.)  Defendants are
correct.

---

[17]  Unlike Section 51.7, Section 52.1 does not
require a plaintiff to possess a protected
characteristic; "it applies to an affected plaintiff
without regard to his or her membership in a protected
class."  <u>Venegas</u>, 32 Cal. 4th at 842 (citation omitted).

38

1    The parties do not dispute that on the day of the

2  incident Decedent was "disturbed."  (See SUF ¶ 3; SGI

3  ¶ 3.)  Plaintiffs offer no evidence, however, that

4  Decedent suffered from a mental disability that limited a

5  major life activity, as defined in section 12926(j)(1).

6  Thus, Plaintiffs have not satisfied the standard under

7  Section 51(e)(1), and by implication, that Decedent had a

8  protected characteristic under Section 51.7.  The Court

9  therefore GRANTS Defendants' Motion as to this claim.

10

11                **V.  CONCLUSION**

12    For the foregoing reasons, the Court GRANTS

13  Defendants' Motion for Summary Judgment, and DISMISSES

14  the FAC WITH PREJUDICE.

15

16  Dated:  March 30, 2012

17                       VIRGINIA A. PHILLIPS
                        United States District Judge

18

19

20

21

22

23

24

25

26

27

28