1

2

3                                                            O

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10

11   MARIA D. MEJIA; SALVADOR )     Case No. EDCV 11-00452 VAP
     MELGOZA, MARIA GUADALUPE )     (DTBx)
12   MELGOZA,                  )
                               )     **ORDER GRANTING MOTION FOR**
13              Plaintiff,     )     **SUMMARY JUDGMENT**
                               )
14      v.                     )     **[Motion filed on January 9,**
                               )     **2012]**
15   CITY OF SAN BERNARDINO;   )
     DOES 1-10, INCLUSIVE,     )
16                             )
                Defendants.    )
17   _____ )

18

19      Before the Court is a Motion for Summary Judgment

20   ("Motion") filed by Defendants City of San Bernardino

21   ("the City"), Officer Brad Grantz, Officer Kenneth

22   Edwards, Officer Troy Forsythe, Officer Christopher Emon,

23   Officer Carlos Gutierrez, Sergeant Dave Dillon, Sergeant

24   Ray Rocha, Sergeant Stephen Lyter, and Chief Keith Kilmer

25   (collectively, "Defendants").[1]  After considering the

26   papers in support of, and opposition to, the Motion, and

27   _____

28      [1]  Officers Grantz, Edwards, Forsythe, Emon, and
     Gutierrez, and Sergeants Dillon, Rocha, and Lyter are
     collectively the "Officer Defendants."

the arguments advanced at the March 5, 2012, hearing, the
Court GRANTS Defendants' Motion.

## I.   PROCEDURAL HISTORY

Plaintiffs Maria D. Mejia, Salvador Melgoza, and
Maria Guadalupe Melgoza (collectively, "Plaintiffs")
filed their Complaint in this Court on March 16, 2011.
(Doc. No. 1.)  On August 26, 2011, Plaintiffs filed their
First Amended Complaint ("FAC"), asserting the following
eleven claims arising out of the fatal shooting of
Fernando Melgoza ("Decedent"):

1.   Unreasonable Search and Seizure – Detention
     under 42 U.S.C. § 1983 against the Officer
     Defendants;

2.   Unreasonable Search and Seizure – Excessive
     Force and Denial of Medical Care under 42 U.S.C.
     § 1983 against the Officer Defendants;

3.   Interference with Familial Relationship under 42
     U.S.C. § 1983 against the Officer Defendants;

4.   Conspiracy to Violate Civil Rights under 42
     U.S.C. §§ 1983, 1985 against the Officer
     Defendants;

5.   Due Process – Conspiracy to Cover Up under 42
     U.S.C. §§ 1983, 1985 against the Officer
     Defendants and Kilmer;

6.   Municipal and Supervisory Liability for
     Unconstitutional Custom, Practice, or Policy,

1   under 42 U.S.C. § 1983 against Defendants City
2   and Kilmer;
3   7.   False Arrest / False Imprisonment against the
4        Officer Defendants and the City
5   8.   Battery against the Officer Defendants and City;
6   9.   Negligence against all Defendants
7   10.  Intentional Infliction of Emotional Distress
8        ("IIED") against the Officer Defendants and
9        City; and
10  11.  Violation of Bane Act, California Civil Code §
11       52.1 against the Officer Defendants and City.
12
13      On January 9, 2012, Defendants filed this Motion,
14  (Doc. No. 37), and the following documents in support:
15  1.   Statement of Undisputed Facts and Conclusions of
16       Law ("SUF");
17  2.   Declaration of Brandi Harper ("Harper Decl."),
18       and attached exhibits;
19  3.   Declaration of Officer Christopher Emon ("Emon
20       Decl.");
21  4.   Declaration of Officer Brad Grantz ("Grantz
22       Decl.");
23  5.   Declaration of Officer Troy Forsythe ("Forsythe
24       Decl.");
25  6.   Declaration of Officer Kenneth Edwards ("Edwards
26       Decl.");
27
28

7.   Declaration of Officer Carlos Gutierrez ("Gutierrez Decl.");

8.   Declaration of Sergeant Stephen Lyter ("Lyter Decl.");

9.   Declaration of Chief Keith Kilmer ("Kilmer Decl");

10.  Declaration of Sergeant Ray Rocha ("Rocha Decl."); and

11.  Declaration of Sergeant Dave Dillon ("Dillon Decl.").

(Doc. Nos. 38 – 49.)

On February 5, 2012, Plaintiffs filed their Opposition.  (Doc. No. 55.)  In support of their Opposition, Plaintiffs also filed a statement of genuine issues and the Declaration of Marjorie Barrios with the exhibits attached thereto.  (Doc. Nos. 57, 58.)  After the Court notified Plaintiffs' counsel of errors in the statement of genuine issues, Plaintiffs filed a corrected Statement of Genuine Issues ("SGI") on February 16, 2012, a supporting Declaration of Marjorie Barrios ("Barrios Declaration"), and exhibits attached to the Barrios Declaration.  (Doc. Nos. 78, 79.)

On February 13, 2012, Defendants filed their Reply. (Doc. No. 61.)  On February 22, 2012, Defendants filed their Response to Plaintiffs' SGI ("SGIR"), and another

Declaration of Brandi Harper ("Harper Declaration II")
with additional exhibits.  (Doc. Nos. 71, 72.)

   The Court notes that both Plaintiffs' Opposition and
Defendants' Motion failed to comply with the Court's
Local Rules.  Specifically, Defendants' Motion totaled 32
pages, in violation of Local Rule 11-6, which limits
briefs to 25 pages.  Moreover, all of Defendants'
declarations are improper, as they are each signed "under
penalty of perjury under the laws of the State of
California . . . ."  (See Harper Decl. at 3; Emon Decl.
at 4; Grantz Decl. at 5; Forsythe Decl. at 5; Edwards
Decl. at 4; Gutierrez Decl. at 3; Lyter Decl. at 3;
Kilmer Decl. at 8.)  Under 28 U.S.C. § 1746, these
attestations are improper.  See 28 U.S.C. § 1746(2).
Nevertheless, as Plaintiffs have not objected to the
declarations on this basis, the Court has considered
them.

   Similarly, the small font size in Plaintiffs'
Opposition violates Local Rule 11-3.5.  And, as the
Opposition is 25 pages in the improper font size, the
Opposition actually exceeds 25 pages, in violation of
Local Rule 11-6.  Additionally, Plaintiffs did not mark
the deposition transcript excerpts in violation of Local
Rule 32-1, nor did Plaintiffs number the pages
sequentially, in violation of Local Rule 11-5.2.

1    The parties are cautioned that future documents filed
2  with the Court must comply with all of the Central
3  District's Local Rules; if they do not, the Court may
4  strike the noncompliant documents.
5
6              **II.   FACTUAL BACKGROUND**
7  **A.  Uncontroverted Facts**
8    Both sides cite facts that are not relevant to
9  resolution of the Motion.  To the extent certain facts
10 are not mentioned in this Order, the Court has not relied
11 on them in reaching its decision.  Additionally, certain
12 of the parties' proposed facts are not supported
13 adequately by the cited evidence; as to those proposed
14 facts, the Court has considered and relied on the
15 underlying evidence and found facts supported by that
16 evidence, to the extent the evidence itself was
17 admissible.  The Court finds the following material facts
18 are supported adequately by admissible evidence and are
19 uncontroverted.  They are "admitted to exist without
20 controversy" for the purposes of these Motions.  L.R. 56-
21 3; <u>see generally</u> Fed. R. Civ. P. 56.
22
23    On May 17, 2010, Decedent lived at Consuelo Salazar's
24 residence, where he rented a bedroom.  (SUF ¶ 1; SGI ¶
25 1.)  Mrs. Salazar's husband and nine-year-old son lived
26 with her at the residence, sharing one bedroom.  (SUF ¶¶
27 1, 2; SGI ¶¶ 1,2.)  Ismael Flores ("Flores") and Rosa
28

Ybarra ("Ybarra") lived at Mrs. Salazar's residence as well, residing in the garage.  (SUF ¶ 2; SGI ¶ 2.)

Some time earlier that day, Decedent had become "disturbed."  (SUF ¶ 3; SGI ¶ 3.)  According to Flores and Ybarra, Decedent was "not himself" that day and was saying peculiar things to them.  (SUF ¶ 4; SGI ¶ 4.) Decedent told Flores and Ybarra that he needed a ride to his sister's house because he did not want anything "disgraceful" to happen in Salazar's house, and asked Flores to drive him there.  (SUF ¶¶ 4, 5; SGI ¶¶ 4,5.)[2] Sometime between 4:30 p.m. and 5:00 p.m. Flores took Decedent to his sister's house.  (SUF ¶ 6; SGI ¶ 6.) Decedent then walked back to Salazar's house, and told Flores and Ybarra that his sister would not permit him to enter her house.  (SUF ¶ 7; Ybarra Dep. 19:10-20:2.)

At an unspecified time after returning from his sister's house, Decedent went to his brother's house. (SUF ¶ 8; SGI ¶ 8.)  Sometime between 8:30 p.m. and 9:00 p.m., Decedent's brother, Salvador Melgoza ("Melgoza"), brought Decedent back to Salazar's house. (SUF ¶ 8; SGI ¶ 8.)

---

[2]  Plaintiffs do not dispute that Decedent requested Flores drive him to Decedent's sister's house; rather, they dispute why Decedent requested Flores take him. Accordingly, the Court deems the fact uncontroverted for purposes of this Motion.  See Fed. R. Civ. P. 56(e)(2); L.R. 56-3.

1    Around 11:30 p.m., Salazar, her husband, and her son
2    went to sleep in Salazar's bedroom.  (SUF ¶ 10; SGI
3    ¶ 10.)  When Salazar woke up to assist her husband, she
4    saw Decedent standing in the doorway of her bedroom,
5    holding a knife in his hand.  (SUF ¶¶ 10, 11; SGI ¶¶ 10,
6    11.)  Salazar knew she had locked her bedroom door before
7    going to sleep, and believed Decedent had broken the lock
8    with his knife.  (SUF ¶ 12; SGI ¶ 12.)

9

10   Decedent told Salazar, her son, and her husband that
11   there was someone outside their bedroom, and he refused
12   to leave.  (SUF ¶ 13; SGI ¶ 13.)[3]  Salazar called
13   Decedent's sister, who told Salazar to "leave him alone,
14   and if he continues, call the police."  (SGIR ¶ 14.)
15   Salazar then called Flores, who also told her to call the
16   police.  (SUF ¶ 15; SGI ¶ 15.)

17

18   After receiving Salazar's call, Flores went inside
19   the house to assist Salazar.  (SUF ¶ 16; SGI ¶ 16.)  Upon
20   entering Salazar's bedroom, Flores saw Decedent inside
21   the room, in a squatting position near the windows;
22   Decedent was holding two knives.  (SUF ¶ 17; SGI ¶ 17.)
23   Decedent told Flores to be careful because "they" were

24

25

26   _____

27   [3]  Plaintiffs dispute Defendants' fact, but do not
     offer facts that controvert the fact.  Accordingly, the
     Court deems the fact uncontroverted for purposes of this
28   Motion.  See Fed. R. Civ. P. 56(e)(2); L.R. 56-3.

breaking in; Decedent said he was going to kill "them."
(SUF ¶¶ 18, 19; SGI ¶¶ 18, 19.)

On May 18, 2010, at approximately 2:00 a.m., San
Bernardino Police Department dispatch transmitted a radio
broadcast for officers to respond to Salazar's address,
and that the reporting party had reported a complaint of
a man with a knife.  (SUF ¶ 21.)[4]  Officers Grantz,
Forsythe, Emon, Edwards, and Gutierrez all heard the
dispatch and responded to Salazar's residence.  (SUF
¶ 22; SGI ¶ 22.)  Upon arriving, the officers were met in
the driveway by the reporting party, Salazar, who exited
the house speaking in Spanish.  (SUF ¶¶ 23, 24; SGI
¶¶ 23, 24.)

Officer Gutierrez remained in the driveway speaking
with Salazar, while the other officers approached the
front door.  (SUF ¶ 25; SGI ¶ 25.)  As he and the other
officers approached the house, Officer Edwards heard the
sound of glass breaking.  (SUF ¶ 26; SGI ¶ 26.)

Salazar told Officer Gutierrez that Decedent was
alone in the house, and was armed with a knife.  (SUF
¶ 27; SGI ¶ 27.)  She continued, telling Officer

---

[4] Plaintiffs dispute Defendants' fact, but do not
offer facts that controvert the fact.  Accordingly, the
Court deems the fact uncontroverted for purposes of this
Motion.  <u>See</u> Fed. R. Civ. P. 56(e)(2); L.R. 56-3.

Gutierrez that Decedent had mental problems and took medication.  (SUF ¶ 28; SGI ¶ 28.)  Salazar also told Officer Gutierrez that Decedent said he was going to kill everyone.  (SUF ¶ 28.)[5]  Officer Gutierrez relayed this information to the other officers.  (SUF ¶ 29; SGI ¶ 29.)

After Officer Gutierrez relayed the information to the other officers, those officers entered Salazar's house.  (SUF ¶ 30; SGI ¶ 30.)  Officer Grantz had designated Officer Forsythe as the "less-than-lethal officer," and, accordingly, Officer Forsythe had his Taser out upon entering .  (SUF ¶ 31.)[6]

Before the officers entered, however, Officer Grantz gave commands in both English and Spanish that they were from the police department, that they were entering the house, and that anyone in the residence needed to make the officers aware of his or her presence.  (SUF ¶ 32;

---

[5]  Plaintiffs dispute Defendants' fact, but do not offer facts that controvert the fact.  In his declaration, Officer Gutierrez stated that Salazar informed him that Decedent had "threatened to kill everyone."  (Gutierrez Decl. ¶ 3.)  At his deposition, however, Officer Gutierrez testified Salazar told him that Decedent was "threatening to kill people." (Gutierrez Dep. 6:13-20.)  Officer Gutierrez's statements are consistent.  Accordingly, as Plaintiff has not offered facts controverting Defendants' fact, the Court deems the fact uncontroverted for purposes of this Motion.  See Fed. R. Civ. P. 56(e)(2); L.R. 56-3.

[6]  Plaintiffs dispute Defendants' fact, but do not offer facts that controvert the fact.  Accordingly, the Court deems the fact uncontroverted for purposes of this Motion.  See Fed. R. Civ. P. 56(e)(2); L.R. 56-3.

1  SGI ¶ 32.)   The officers waited for a response; hearing
2  none, they began clearing the residence room-by-room.
3  (SUF ¶ 33; SGI ¶ 33.)

4

5      Officer Grantz approached the north bedroom door,
6  with Officer Emon behind him, Officer Forsythe at the
7  hallway entrance, and Officer Emon watching the south
8  bedroom door.   (SUF ¶ 34; SGI ¶ 34.)   Decedent struck
9  Officer Grantz as he entered the bedroom.[7]

10

11  _____

12      [7] Plaintiffs dispute whether or not Decedent struck
   Officer Grantz when the officer entered the bedroom.
13  Officers Grantz, Forsythe, and Emon, all state they
   observed Decedent striking Officer Grantz.   (See Emon
14  Decl. ¶ 6; Forsythe Decl. ¶ 6; Grantz Decl. ¶ 9.) On the
   other hand, Plaintiffs direct the Court to two pieces of
15  evidence they contend could lead a reasonable fact-finder
   to conclude Decedent did not strike Officer Grantz before
16  Officer Grantz shot him.   First, Plaintiffs rely on a
   photograph of Officer Grantz taken after the shooting,
17  and secondly they cite Officer Grantz's failure to
   request or receive medical aid for his injury.   (See SGI
18  ¶ 34.)   Plaintiffs' evidence does not, however,
   controvert Defendants' proffered fact that Decedent
19  struck Officer Grantz.   First, the photograph shows a
   faint but visible small, diagonal red mark on Officer
20  Grantz's forehead.   In Officer Edwards's Declaration he
   states that after the shooting he "noticed a diagonal red
21  mark on [Officer Grantz's] forehead that looked like he
   had been struck by something."   (Edwards Decl. ¶ 6.)
22  Plaintiffs offer no evidence indicating the mark in the
   photograph was caused by something other than Decedent
23  striking Officer Grantz.   Hence, rather than controvert
   Defendants' version of the events leading up to the
24  shooting, the photograph supports it as it substantiates
   Officer Grantz's statement that Decedent struck him as he
25  entered the bedroom.   Additionally, Plaintiffs' remaining
   evidence – that Officer Grantz did not seek or receive
26  medical aid for the injury – does not contradict
   Defendants' offered fact that Decedent struck Officer
27  Grantz; it shows only that the officer's injury was not
   severe enough that he either sought or received such care
28  for it.

Immediately after Decedent struck Officer Grantz, Officer Grantz fired several shots in Decedent's direction.  (SUF ¶ 35.)[8]  Decedent fell, causing the door to close; Officer Grantz saw the door move, and thought Decedent was trying to pull the door open to come out again.  (SUF ¶ 36; SGI ¶ 36.)[9]  Officer Grantz fired another shot into the door approximately one second after firing the first shots.  (SUF ¶ 36; SGI ¶ 36.)

Officers Forsythe and Emon pulled Officer Grantz behind them, Emon believing Grantz had been stabbed by the assailant.  (SUF ¶ 37, SGI ¶ 37.)  Officer Edwards called out "shots fired" over his radio.  (SUF ¶ 38; SGI ¶ 38.)  Officer Forsythe pushed open the door, and Officers Forsythe and Emon saw Decedent on the bedroom floor.  (SUF ¶ 39; SGI ¶ 39.)  The officers instructed Decedent to show his hands, as one of them was tucked underneath his body.  (SUF ¶ 39; SGI ¶ 39.)  Decedent placed both hands on his lap.  (SUF ¶ 39; SGI ¶ 39.)  Officers Emon and Forsythe called for medical assistance on their radios.  (SUF ¶ 40; SGI ¶ 40.)

---

[8] Plaintiffs dispute Defendants' fact, but do not offer evidence that controverts it.  Accordingly, the Court deems the fact uncontroverted for purposes of this Motion.  <u>See</u> Fed. R. Civ. P. 56(e)(2); L.R. 56-3.

[9] Plaintiffs dispute whether Grantz thought Decedent was going to pull the door open.  Plaintiffs offer no evidence controverting Defendants' fact.  Accordingly, the Court deems the fact uncontroverted for purposes of this Motion.  <u>See</u> Fed. R. Civ. P. 56(e)(2); L.R. 56-3.

1    Officers Emon and Grantz cleared the remainder of the
2 house and backyard.  (SUF ¶ 41; SGI ¶ 41.)  Officers
3 Edwards and Forsythe moved Decedent from the bedroom to
4 the family room to allow more space for paramedics to
5 render medical aid.  (SUF ¶ 41.)[10]  Officer Gutierrez
6 never entered Salazar's house that night.  (SUF ¶ 49; SGI
7 ¶ 49.)

8

9    Sergeants Rocha, Lyter, and Dillon investigated the
10 shooting incident.  (SUF ¶ 48; SGI ¶ 48.)  Chief Kilmer
11 retired shortly after the incident, and was not involved
12 in the shooting or subsequent investigation.  (SUF ¶ 47;
13 SGI ¶ 47.)

14

15    The City requires all of its officers to complete the
16 state mandated training, as defined by the Commission on
17 Peace Officer Standards in Training, "P.O.S.T."  (SUF
18 ¶ 51.)[11]  P.O.S.T. covers more than forty areas of
19 training, including "reporting, investigating,
20 documenting, and use of force / excessive force."  (Id.)

21

22 _____

23    [10] Plaintiffs dispute why Officers Edwards and
   Forsythe moved Decedent, but do not offer any evidence
   controverting Defendants' stated reason for moving
24 Decedent; the cited deposition testimony (Grantz Dep. at
   36) was not included with the Opposition.  Accordingly,
25 the Court deems the fact uncontroverted for purposes of
   this Motion.  See Fed. R. Civ. P. 56(e)(2); L.R. 56-3.

26
   [11] Plaintiffs dispute Defendants' fact, but do not
27 offer facts that controvert the fact.  Accordingly, the
   Court deems the fact uncontroverted for purposes of this
28 Motion.  See Fed. R. Civ. P. 56(e)(2); L.R. 56-3.

### III.   LEGAL STANDARD

A motion for summary judgment shall be granted when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986).  The moving party must show that "under the governing law, there can be but one reasonable conclusion as to the verdict." <u>Anderson</u>, 477 U.S. at 250.

Generally, the burden is on the moving party to demonstrate that it is entitled to summary judgment. <u>Margolis v. Ryan</u>, 140 F.3d 850, 852 (9th Cir. 1998); <u>Retail Clerks Union Local 648 v. Hub Pharmacy, Inc.</u>, 707 F.2d 1030, 1033 (9th Cir. 1983).  The moving party bears the initial burden of identifying the elements of the claim or defense and evidence that it believes demonstrates the absence of an issue of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).

When the non-moving party has the burden at trial, however, the moving party need not produce evidence negating or disproving every essential element of the non-moving party's case.  <u>Celotex</u>, 477 U.S. at 325. Instead, the moving party's burden is met by pointing out there is an absence of evidence supporting the non-moving party's case.  <u>Id.</u>

The burden then shifts to the non-moving party to show that there is a genuine issue of material fact that must be resolved at trial.  Fed. R. Civ. P. 56(e); Celotex, 477 U.S. at 324; Anderson, 477 U.S. at 256.  The non-moving party must make an affirmative showing on all matters placed in issue by the motion as to which it has the burden of proof at trial.  Celotex, 477 U.S. at 322; Anderson, 477 U.S. at 252.  "This burden is not a light one.  The non-moving party must show more than the mere existence of a scintilla of evidence."  In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010) (citing Anderson, 477 U.S. at 252).  "The non-moving party must do more than show there is some 'metaphysical doubt' as to the material facts at issue."  In re Oracle, 627 F.3d at 387 (citing Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)).

A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  Anderson, 477 U.S. at 248.  In ruling on a motion for summary judgment, the Court construes the evidence in the light most favorable to the non-moving party.  Barlow v. Ground, 943 F.2d 1132, 1135 (9th Cir. 1991); T.W. Elec. Serv. Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630-31 (9th Cir. 1987).

1                        **IV. DISCUSSION**

2  **A.   Plaintiffs' First and Second Claims**

3       **1.   Standing**

4       In their first and second claims, Plaintiffs seek

5  relief under 42 U.S.C. § 1983 for Defendants' alleged

6  violation of Decedent's Fourth Amendment rights.[12]

7  "Fourth Amendment rights are personal rights which . . .

8  may not be vicariously asserted."   <u>Alderman v. United</u>

9  _____

10      [12] It is unclear from Defendants' Motion whether they
are moving for summary judgment as to the denial of
11  medical care component of Plaintiffs' § 1983 claim.   The
Ninth Circuit analyzes claims regarding deficient medical
12  care during and immediately following an arrest under the
Fourth Amendment.   <u>See</u> <u>Tatum v. City and Cnty. of S.F.</u>,
13  441 F.3d 1090, 1098-99 (9th Cir. 2006) (explaining that
while the Supreme Court has analyzed such claims under
14  the Due Process Clause of the Fourteenth Amendment in the
past, it appears that the Fourth Amendment is the proper
15  authority following the decision in <u>Graham v. Connor</u>, 490
U.S. 386 (1989)).   The Fourth Amendment requires law
16  enforcement officers to provide objectively reasonable
post-arrest care to an apprehended suspect.   <u>Id.</u> at
17  1099.   Although the Ninth Circuit has not prescribed the
contours of objectively reasonable post-arrest care, it
18  has made clear that "a police officer who promptly
summons . . . necessary medical assistance has acted
19  reasonably for purposes of the Fourth Amendment[.]" <u>Id.</u>;
<u>see also</u> <u>City of Revere v. Mass Gen. Hosp.</u>, 463 U.S. 239,
20  245 (1983) ("Whatever the standard may be, [the
defendant] fulfilled its constitutional obligation by
21  seeing that [the apprehended person] was taken promptly
to the hospital that provided the treatment necessary for
22  his injury.").   Here, the uncontroverted evidence
indicates that immediately after securing Decedent,
23  Officers Emon and Forsythe called for medical assistance
on their radios, and moved Decedent into an area where he
24  could receive medical aid.   Accordingly, as the officers
promptly summoned medical care for Decedent, they acted
25  "reasonably for purposes of the Fourth Amendment[.]"
<u>Tatum</u>, 441 F.3d at 1099.   And, as the officers acted
26  reasonably, Plaintiffs cannot maintain their claims based
on a denial of medical care.   Thus, insofar as
27  Plaintiffs' § 1983 claim is based on a denial of medical
care, that claim cannot withstand summary judgment, and
28  the Court GRANTS Defendants' Motion.

States, 394 U.S. 165, 174 (1969); see also United States
v. Struckman, 603 F.3d 731, 746 (9th Cir. 2010) (citing
Alderman).   The general rule is that only the person
whose Fourth Amendment rights were violated can sue to
vindicate those rights.   Moreland v. Las Vegas Metro.
Police Dep't, 159 F.3d 365, 369 (9th Cir. 1998).   In
Section 1983 actions, however, the survivors of a person
killed as a result of an officer's excessive use of force
may assert a Fourth Amendment claim on that person's
behalf if the relevant state's law authorizes a survival
action.   Id.

California's survival statute provides that "[a]
cause of action that survives the death of the person
entitled to commence an action or proceeding passes to
the decedent's successor in interest, subject to [the
California Probate Code] . . . and an action may be
commenced by the decedent's personal representative or,
if none, by the decedent's successor in interest."   Cal.
Code Civ. Proc. § 377.30.[13]   Further, California's Probate

---

[13] Defendants cite to California Code of Civil
Procedure section 377.60 in support of their argument.
Although some cases have noted Section 337.60's
applicability in § 1983 claims based on Fourth Amendment
violations, see Moreland, 159 F.3d at 269, more recent
case law indicates the applicable survival statute is
section 377.30, not section 377.60.   See Tatum v. City
and Cnty. of S.F., 441 F.3d 1090, 1093 n.2 (9th Cir.
2006); Cotton v. City of Eureka, No. C 08-04386 SBA, 2010
WL 5154945, at *3 (N.D. Cal. Dec. 14, 2010) (explaining
when Section 377.30 applies and when Section 377.60
applies); accord Hayes v. Cnty. of San Diego, 638 F.3d
(continued...)

Code defines "personal representative" for purposes of section 377.30 as, <u>inter alia</u>, the executor or administrator of the estate.  <u>See Arres v. City of Fresno</u>, No. CV F 10-1628 LJO SMS, 2011 WL 284971, at *7 (E.D. Cal. Jan. 26, 2011); <u>Estate of Garcia-Vasquez v. Cnty. of San Diego</u>, No. 06CV1322-LAB (LSP), 2008 WL 418913, at *5, n.5 (S.D. Cal. Sept. 9, 2008).

Plaintiffs' FAC states that Plaintiffs "have filed a probate action in [the] San Bernardino Superior Court . . . seeking to have Plaintiff MEIJA [sic] appointed Administrator" of Decedent's Estate.  (FAC ¶ 17.)  More importantly, however, Plaintiffs attached as Exhibit H to their Opposition certified copies of a San Bernardino Superior Court Letter of Administration indicating that court appointed Plaintiff Mejia as the administrator of Decedent's estate.  (<u>See</u> Doc. No. 58-1.)

Accordingly, as the administrator for Decedent's estate, Plaintiff Mejia has standing to pursue Decedent's claims for the alleged violations of his Fourth Amendment rights.  <u>Moreland</u>, 159 F.3d at 369.  Nevertheless,

---

[13](...continued) 688 (9th Cir.) opinion withdrawn on other grounds 658 F.3d 867 (9th Cir. 2011) (finding that the district court erred in relying on Section 377.60 to determine whether the plaintiffs had standing to assert a § 1983 claim on behalf of a survivor of a person killed as a result of excessive force, and holding that Section 377.30 is the applicable statute).

1  Plaintiffs have not demonstrated Plaintiffs Salvador
2  Melgoza or Maria Guadalupe Melgoza also have standing.
3  The Court therefore GRANTS Defendants' Motion as to
4  Plaintiffs Salvador and Maria Guadalupe Melgoza.
5
6      **2.   Qualified Immunity for Officer Grantz**
7      "[G]overnment officials performing discretionary
8  functions generally are shielded from liability for civil
9  damages insofar as their conduct does not violate clearly
10  established statutory or constitutional rights of which a
11  reasonable person would have known."  <u>Harlow v.</u>
12  <u>Fitzgerald</u>, 457 U.S. 800, 818 (1982).  A plaintiff need
13  not point to a case specifically on point establishing
14  the official action as unlawful, but he must establish
15  that in light of pre-existing law the unlawfulness of the
16  defendant's actions is apparent.  <u>Anderson v. Creighton</u>,
17  483 U.S. 635, 640 (1987).  "The contours of the right
18  must be sufficiently clear that a reasonable official
19  would understand that what he is doing violates that
20  right."  <u>Id.</u>
21
22      These issues, the existence of clearly established
23  law and whether the defendant acted reasonably in light
24  of the clearly established law, are questions of law.
25  <u>Elder v. Holloway</u>, 510 U.S. 510, 516 (1994); <u>Hunter v.</u>
26  <u>Bryant</u>, 502 U.S. 224, 228 (1991).  In <u>Harlow</u>, the Court
27  stated:
28

On summary judgment, the judge appropriately may determine, not only the currently applicable law, but whether that law was clearly established at the time an action occurred. If the law at that time was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to "know" that the law forbade conduct not previously identified as unlawful . . . . If the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct. Nevertheless, if the official pleading the defense claims extraordinary circumstances and can prove that he neither knew nor should have known of the relevant legal standard, the defense should be sustained. But again, the defense would turn primarily on objective factors.

Harlow, 457 U.S. at 818-19. If an officer's actions are objectively reasonable under the circumstances and in light of the clearly established law, then qualified immunity should be found. Anderson, 483 U.S. at 641. In a summary judgment context, to determine whether qualified immunity applies, courts

ask two questions: (1) whether, taking the facts in the light most favorable to the nonmoving party, the officers' conduct violated a constitutional right, and (2) whether the right was clearly established at the time of the alleged misconduct. See Saucier v. Katz, 533 U.S. 194, 200-01 (2001), overruled in part by Pearson v. Callahan, 555 U.S. 223 (2009). Either question may be addressed first, and if the answer to either is "no," then the officers cannot be held liable for damages. See Pearson, 555 U.S. at 236.

Glenn v. Wash. Cnty., __ F.3d __, 2011 WL 6760348, at *4 (9th Cir. 2011).

**3.   Excessive Force by Officer Grantz**

"A claim against law enforcement officers for excessive force is analyzed under the Fourth Amendment's 'objective reasonableness' standard." Arpin v. Santa Clara Valley Trans. Agency, 261 F.3d 912, 921 (9th Cir. 2001) (citing Graham v. Connor, 490 U.S. 386, 388 (1989)).  "The Fourth Amendment requires police officers making an arrest to use only an amount of force that is objectively reasonable in light of the circumstances facing them." Blankenhorn v. City of Orange, 485 F.3d 463, 477 (9th Cir. 2007) (citing Tennessee v. Garner, 471 U.S. 1, 7-8 (1985)).  "The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Arpin, 261 F.3d at 921 (quoting Graham, 490 U.S. at 396).  "To determine whether a specific use of force was reasonable, [courts] must balance 'the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing government interests at stake.'" Blankenhorn, 485 F.3d at 477 (quoting Graham, 490 U.S. at 396).  "Relevant factors to this inquiry include, but are not limited to, 'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'"  Id.  "These factors, however, are not

exclusive." Bryan v. McPherson, 630 F.3d 805, 826 (9th Cir. 2010). Another factor is the availability of alternative methods to effectuate an arrest or overcome resistance. Smith v. City of Hemet, 394 F.3d 689, 701-02 (9th Cir. 2005) (en banc); Headwaters Forest Defense v. Cnty. of Humboldt, 240 F.3d 1185, 1204 (9th Cir. 2000), vacated on other grounds, 534 U.S. 801 (2001) ("[P]olice are required to consider what other tactics if any were available to effect the arrest."). The most important of these factors is the threat posed by the suspect. City of Hemet, 394 F.3d at 702. "A simple statement by an officer that he fears for his safety or the safety of others is not enough; there must be objective factors to justify such a concern." Bryan, 630 F.3d at 826 (citation and internal quotations omitted).

Additionally, where it is or should be apparent that a person is emotionally or mentally unstable, that is a factor that must be considered in determining the reasonableness of the force employed. See Drummond v. City of Anaheim, 343 F.3d 1052, 1058 (9th Cir. 2003). The Ninth Circuit has not, however, "adopt[ed] a per se rule establishing two different classifications of suspects: mentally disabled persons and serious criminals." Deorle v. Rutherford, 272 F.3d 1272, 1283 (9th Cir. 2001).

When the excessive force used is deadly force, it "satisfies Fourth Amendment standards '[w]here the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others.'"   Blanford v. Sacramento Cnty., 406 F.3d 1110, 1115 (9th Cir. 2005) (quoting Garner, 471 U.S. at 11); Price v. Sery, 513 F.3d 962, 970 (9th Cir. 2008) ("'While the use of 'force' is reasonable under the Fourth Amendment if it would seem justified to a reasonable police officer in light of the surrounding circumstances, the use of 'deadly force' is only justified if the officer has probable cause to believe that a suspect poses a threat of serious physical harm to the officer or others,' we were specifying the kind of surrounding circumstances that uniquely justify the use of deadly force-a threat of serious physical harm or worse." (citing Fikes v. Cleghorn, 47 F.3d 1011, 1014 n.2 (9th Cir. 1995))).   "The use of 'probable cause' is . . . synonymous with 'reasonable belief,' and the use of deadly force is tied to the nature of the threat, not to the quantum of evidence required to believe in it." Price, 513 F.3d at 970.   Additionally, "[a] reasonable use of deadly force encompasses a range of conduct, and the availability of less intrusive alternatives will not render conduct unreasonable." Wilkinson v. Torres, 610 F.3d 546, 551 (9th Cir. 2010).

In <u>Garner</u>, the Supreme Court explained that although it is unreasonable to apprehend an unarmed, nondangerous suspect by killing him, "[w]here the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officers or to others, it is not constitutionally unreasonable to prevent escape by using deadly force [and] if the suspect threatens the officer with a weapon or there is probable cause to believe that he has committed a crime involving the infliction or threatened infliction of serious physical harm, deadly force may be used if necessary to prevent escape, and, if, where feasible, some warning has been given."   471 U.S. at 11-12.

Here, the relevant facts are uncontroverted.  At the time the officers entered the house, Officer Gutierrez had informed them that based on information from Mrs. Salazar, Decedent was inside the house, was armed with at least one knife, and had threatened to kill "everyone." Upon entering, the officers announced their presence, but Decedent failed to respond.  Then, when Officer Grantz entered the bedroom, Decedent struck him with an unknown object.  Given the totality of evidence, Officer Grantz had a "reasonable belief" that Decedent "pose[d] a threat of serious physical harm to [him]" and the other officers.  <u>Price</u>, 513 F.3d at 970.

1  | The Ninth Circuit has held that "where a suspect
2  | threatens an officer with a weapon such as a gun or a
3  | knife, the officer is justified in using deadly force."
4  | City of Hemet, 394 F.3d at 704.  Here, Decedent did not
5  | merely threaten Officer Grantz, he struck the officer
6  | with what was believed to be a knife, thus presenting a
7  | more significant threat to the officers.  Accordingly,
8  | Officer Grantz was justified in using deadly force.
9  | Indeed, the threat Decedent posed to the officers was
10 | greater here than in other cases where the Ninth Circuit
11 | has concluded the force was reasonable as a matter of
12 | law.  See Sandberg v. City of Torrance, No. 10-55608,
13 | 2011 WL 5154229, at *2 (9th Cir. Nov. 1, 2011) (finding
14 | officers' use of deadly force reasonable as a matter of
15 | law where suicidal decedent brandished a knife and
16 | charged at officers); Billington v. Smith, 292 F.3d 1177,
17 | 1185 (9th Cir. 2002) (holding that deadly force was
18 | justified where a suspect violently resisted arrest,
19 | physically attacked the officer, and grabbed the
20 | officer's gun); Reynolds v. County of San Diego, 84 F.3d
21 | 1162, 1168 (9th Cir. 1996) (holding that deadly force was
22 | reasonable where a suspect, who had been behaving
23 | erratically, swung a knife at an officer); Scott v.
24 | Henrich, 39 F.3d 912, 914-15 (9th Cir. 1994) (suggesting
25 | that the use of deadly force is objectively reasonable
26 | where a suspect points a gun at officers); Garcia v.
27 | United States, 826 F.2d 806, 812 (9th Cir. 1987) (holding
28 |

25

that deadly force was reasonable where the plaintiff attacked a border patrol agent with a rock and stick). As Officer Grantz's use of force was objectively reasonable as a matter of law, Plaintiffs cannot maintain their excessive force claim.[14]

The Court therefore GRANTS Defendants' Motion as to Plaintiff's First and Second Claims for violations of Decedent's Fourth Amendment rights.[15]

**D.    Plaintiffs' Claims Against Defendants Kilmer, Edwards, Forsythe, Emon, Gutierrez, Dillon, Rocha, and Lyter**

Defendants also move for summary judgment as to all individual Defendants other than Officer Grantz.  First, as to Chief Kilmer, the uncontroverted facts demonstrate he had no involvement in the shooting or subsequent

---

[14]    To the extent Plaintiffs argue the officers used excessive force unreasonably because they should have considered less intrusive alternatives, that argument lacks merit.  See Scott v. Henrich, 39 F.3d 912, 915 (9th Cir. 1994) ("[A]s the text of the Fourth Amendment indicates, the appropriate inquiry is whether the officers acted reasonably, not whether they had less intrusive alternatives available to them." (citing Illinois v. Lafayette, 462 U.S. 640, 647 (1983); United States v. Martinez-Fuerte, 428 U.S. 543, 556-57 n.12 (1976))).

[15]    As there is no constitutional violation, the Court need not address whether Officer Grantz or the other officers are entitled to qualified immunity. Glenn, 2011 WL 6760348, at *4 (holding that if there is no constitutional violation, courts need not continue with the qualified immunity analysis).

investigation.  Accordingly, Defendants contend he is a "duplicative defendant" as Plaintiffs are already suing the City of San Bernardino.  (Mot. at 16.)  In support, Defendants rely on <u>Kentucky v. Graham</u>, 473 U.S. 159 (1985).  There, the Court discussed the distinction between suing a governmental official in his individual versus official capacity.  The Court did not address "duplicative defendants."  <u>Graham</u> therefore is inapposite.  Nevertheless, as the Court grants Defendants' Motion as to all of Plaintiffs' claims on separate grounds, Defendants' argument as to Chief Kilmer is moot.

The uncontroverted facts show that the only involvement of Sergeants Dillon, Lyter, and Rocha was their investigation after the shooting.  Defendants contend Plaintiffs have no claim alleging, or evidence indicating, those officers' actions violated State or Federal law.  (Mot. at 16.)  Plaintiffs' only claim in their FAC that could be construed as directed to these officers is their negligence claim.  In that claim, Plaintiffs contend the "Officer Defendants," including Sergeants Dillon, Lyter, and Rocha, were negligent in their handling of evidence and witnesses.  (FAC ¶ 85(i).)  Nevertheless, Plaintiffs have not offered any evidence demonstrating these officers were negligent.  Accordingly, Defendants have demonstrated there is an

absence of evidence supporting Plaintiffs' claims against Sergeants Dillon, Lyter, and Rocha. <u>Celotex</u>, 477 U.S. at 325. As the burden shifts to Plaintiffs, and Plaintiffs have not demonstrated there is a triable issue of fact as to their claims against these officers, Plaintiffs have not satisfied their burden. <u>Celotex</u>, 477 U.S. at 324. The Court therefore GRANTS Defendants' Motion as to Sergeants Dillon, Lyter, and Rocha.

Defendants also seek summary judgment as to Plaintiffs' claims against Officers Emon, Edwards, Forsythe, and Gutierrez, as none of those officers had any "personal involvement in the actual shooting." (Mot. at 16.) "[I]ndividual liability under § 1983 arises only upon a showing of personal participation by the defendant." <u>Avalos v. Baca</u>, 596 F.3d 583, 587 n.3 (9th Cir. 2010) (citing <u>Taylor v. List</u>, 880 F.2d 1040, 1045 (9th Cir. 1989) and <u>Fayle v. Stapley</u>, 607 F.2d 858, 862 (9th Cir. 1979)). The uncontroverted evidence demonstrates that these officers did not participate in the alleged deprivation of Plaintiffs' rights; <u>i.e.</u>, the use of excessive force by Officer Grantz.

Plaintiffs respond, contending liability under § 1983 extends "to those who perform functions 'integral' to an unlawful search, even if their individual actions do not themselves rise to the level of a constitutional

28

violation."  (Opp'n at 30.)  Plaintiffs provide an accurate statement of the law in this Circuit.  See Boyd v. Benton Cnty., 374 F.3d 773, 779-80 (9th Cir. 2004). Plaintiffs do not explain, however, how the actions of Officers Emon, Edwards, Forsythe, and Gutierrez were "integral" to the shooting here.  Accordingly, the Court GRANTS Defendants' Motion as to these officers.

**E.   Plaintiffs' Monell Claim**

     **a.   Policies, Customs, and Procedures**

In their FAC, Plaintiffs assert a Monell[16] claim based on: (1) the City's failure to train officers adequately; and (2) numerous generalized policies, procedures, and customs that Plaintiffs contend contributed to Officer Grantz using excessive force against Decedent.  (See FAC ¶ 62).  Defendants move for summary judgment as to this claim, attacking certain of the policies as pled in Plaintiffs' FAC.  In Plaintiffs' Opposition, they list the specific "policies" at issue, which pertain to barricaded, mentally ill persons; specifically: the custom not to call the "SWAT" team; the custom not to use tear gas; the custom not to attempt to contact the person by telephone; the custom not to use counseling resources to intervene; and the custom not to use less-than-lethal force.  (Opp'n at 12-14.)

---

[16] Monell v. Dep't of Soc. Serv., 436 U.S. 658 (1978).

29

1   Plaintiffs contend these policies constitute deliberate

2   indifference to those with mental illnesses.

3

4       The parties' arguments notwithstanding, the Court

5   need not resolve whether these policies constitute

6   deliberate indifference to those with mental illnesses.

7   The Ninth Circuit has held that

8

9           In order to establish liability for governmental
            entities under Monell, a plaintiff must prove (1)
10          that [the plaintiff] possessed a constitutional
            right of which [s]he was deprived; (2) that the
11          municipality had a policy; (3) that this policy
            amounts to deliberate indifference to the
12          plaintiff's constitutional right; and, (4) that
            the policy is the moving force behind the
13          constitutional violation.

14  Dougherty v. City of Covina, 654 F.3d 892, 900 (9th Cir.

15  2011) (citation and internal quotations omitted)

16  (alterations in original).  Here, as set forth in Section

17  IV.A., supra, Plaintiffs cannot maintain their claims

18  that Defendants deprived Decedent of a constitutional

19  right.  Hence, Plaintiffs cannot satisfy the first

20  element of proving their Monell claim.  The Court

21  therefore GRANTS Defendants' Motion as to Plaintiffs'

22  Monell claim.

23

24  **F.  Plaintiffs' Conspiracy Claims Under 42 U.S.C. §§**

25      **1983, 1985**

26      Defendants also move for summary judgment as to

27  Plaintiffs' conspiracy claims under 42 U.S.C. §§ 1983 and

28

1  1985.   To establish a claim for conspiracy under § 1983,
2  a plaintiff "must show an agreement or meeting of the
3  minds to violate constitutional rights."  <u>Franklin v.</u>
4  <u>Fox</u>, 312 F.3d 423, 441 (9th Cir. 2002).  Defendants argue
5  no evidence exists supporting Plaintiffs' conspiracy
6  claim.  (<u>See</u> Mot. at 26.)  Defendants are correct.  Here,
7  Plaintiffs have not established a constitutional
8  violation or offered any evidence demonstrating there is
9  a triable issue of material fact as to their conspiracy
10  claim.  Accordingly, summary judgment on this claim is
11  proper.  <u>Celotex</u>, 477 U.S. at 324-25.

12

13      Defendants also contend Plaintiffs cannot establish a
14  conspiracy in violation of 42 U.S.C. § 1985.   To
15  establish a conspiracy in violation of § 1985(3) (the
16  only section potentially applicable here), the plaintiff
17  must show that there was a conspiracy motivated by racial
18  or class-based discriminatory animus.  <u>Sever v. Alaska</u>
19  <u>Pulp Corp.</u>, 978 F.2d 1529, 1536 (9th Cir. 1992).
20  Defendants again argue no evidence exists supporting this
21  claim.  Defendants are correct; there is nothing in the
22  record indicating any of Defendants' actions were based
23  on a race or class-based discriminatory animus.
24  Accordingly, summary judgment on this claim is proper as
25  well.

26
27
28

1    The Court therefore GRANTS Defendants' Motion as to
2    these claims.

3

4    **G.   Plaintiffs' "False Arrest / False Imprisonment" Claim**

5        Defendants move for summary judgment as to
6    Plaintiffs' false arrest claim, contending that when
7    Decedent brandished the knife in front of Salazar, her
8    family, Flores, and Ybarra, Decedent committed a
9    misdemeanor in violation of California Penal Code section
10   417(a)(1).  And, this misdemeanor provided officers with
11   probable cause to enter, detain, and arrest Decedent.
12   (Mot. at 27.)

13

14       Under California Penal Code section 847(b), officers
15   acting within the scope of their authority are immune
16   from false arrest or false imprisonment claims if the
17   "arrest was lawful, or the peace officer, at the time of
18   the arrest, had reasonable cause to believe the arrest
19   was lawful."  Cal. Penal Code § 847(b)(1).  "'A
20   warrantless arrest by a peace officer for a misdemeanor
21   is lawful only if the officer has reasonable cause to
22   believe the misdemeanor was committed in the officer's
23   presence.'"  Arpin v. Santa Clara Valley Trasnp. Agency,
24   261 F.3d 912, 920 (9th Cir. 2001) (quoting Johanson v.
25   Dept. of Motor Veh., 36 Cal. App. 4th 1209, 1216 (1995)).
26   The "presence" limitation requires that "the crime must

27

28

be apparent to the officer's senses."  <u>People v. Bloom</u>,
185 Cal. App. 4th 1496, 1501 (2010).

Here, the radio dispatcher communicated to the
officers before they arrived at Salazar's house that
there was someone inside brandishing a knife.
Additionally, when Officer Gutierrez spoke with Salazar,
she told him that Decedent was alone in the house, and
was armed with a knife.  Although the dispatcher and
Salazar communicated facts to the officers indicating
Decedent was brandishing a weapon, Defendants offer no
evidence demonstrating the crime was apparent to the
officers' senses.  Accordingly, Defendants' argument that
they cannot be liable for false arrest because Decedent
committed a misdemeanor lacks merit.

Nevertheless, Plaintiffs' claims are barred under
California Welfare and Institutions Code section 5278
("Section 5278"), which provides that a person authorized
to detain another under section 5150 of that code "shall
not be held either criminally or civilly liable for
exercising this authority in accordance with the law."
"Under section 5150, an officer may detain any person the
officer determines, "'as a result of mental disorder, is
a danger to others, or to himself or herself, or gravely
disabled.'"  <u>Bias v. Moynihan</u>, 508 F.3d 1212, 1220 (9th
Cir. 2007) (quoting Cal. Welf. & Inst. Code § 5150).  The

1   officer's determination must be based on probable cause,

2   which exists "under section 5150 if facts are known to

3   the officer 'that would lead a person of ordinary care

4   and prudence to believe, or to entertain a strong

5   suspicion, that the person detained is mentally

6   disordered and is a danger to himself or herself.'"  Id.

7   (quoting People v. Triplett, 144 Cal. App. 3d 283, 287-88

8   (1983)).

9

10       Here, the uncontroverted facts demonstrate the radio

11  dispatcher communicated to the officers before they

12  arrived at Salazar's house that there was someone inside

13  brandishing a knife; upon their arrival, Salazar told the

14  officers that Decedent had mental problems and took

15  medication; and Decedent stated he was going to kill

16  "everyone."  Under these facts, the officers at the scene

17  were reasonably prudent in believing or entertaining a

18  strong suspicion that Decedent was mentally disordered

19  and a danger to himself or others.  Bias, 508 F.3d at

20  1220.  Hence, under Section 5278, the officers "shall not

21  be held either criminally or civilly liable for

22  exercising this authority in accordance with the law."

23  See id. at 1221 (finding officers not liable for false

24  arrest where there was probable cause to detain the

25  plaintiff under section 5150).

26

27

28

1    Thus, Plaintiffs cannot maintain their false arrest

2    claim, as it is barred by Section 5278.  The Court

3    therefore GRANTS Defendants' Motion as to this claim.

4

5    **H.  Plaintiffs' Battery Claim**

6    Defendants move for summary judgment on Plaintiffs'

7    battery claim, contending that Officer Grantz's use of

8    force was reasonable as a matter of law.  (Mot. at 27-

9    28.)  In California a police officer "may use reasonable

10   force to make an arrest, prevent escape or overcome

11   resistance, and need not desist in the face of

12   resistance."  <u>Edson v. City of Anaheim</u>, 63 Cal. App. 4th

13   1269, 1272-73 (citing Cal. Penal Code § 835a).  "By

14   definition then, a prima facie battery is not established

15   unless and until plaintiff proves unreasonable force was

16   used."  <u>Id.</u> at 1273.  Here, as discussed above, the use

17   of force was reasonable as a matter of law.

18

19   Accordingly, as Plaintiffs cannot make the requisite

20   showing that the force used was unreasonable, the Court

21   GRANTS Defendants' Motion as to this claim.

22

23   **I.  Plaintiffs' Negligence Claim**

24   Defendants move for summary judgment on Plaintiffs'

25   negligence claim, contending that Officer Grantz's use of

26   force was reasonable as a matter of law.  (Mot. at 27-

27   28.)  As with their argument against Plaintiffs' battery

28

claim, Defendants' argument is premised on the reasonableness of Officer Grantz's use of force upon Decedent.  And, as discussed above, Officer Grantz's actions were reasonable as a matter of law.  Accordingly, the Court GRANTS Defendants' Motion as to this claim.

**J.   Plaintiffs' IIED Claim**

In California, the elements of an IIED claim are: (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the severe or extreme emotional distress suffered by that plaintiff; and (3) actual and proximate causation of the emotional distress by defendant's outrageous conduct. Corales v. Bennett, 567 F.3d 554, 571 (9th Cir. 2009) (citations and internal quotations omitted).  Defendants contend Plaintiffs cannot maintain their claim because Defendants' conduct was not "extreme, unreasonable and outrageous" as a matter of law.  (Mot. at 30.)  Here, Officer Grantz's actions were reasonable as a matter of law.  Accordingly, Plaintiffs cannot establish Defendants engaged in "extreme and outrageous conduct."  See Long v. City & Cnty of Honolulu, 511 F.3d 901, 908 (9th Cir. 2007) (holding that where an officer's actions in fatally shooting a criminal suspect were reasonable as a matter of law, that officer's behavior could not be considered "outrageous" conduct for purposes of the plaintiff's

1  intentional infliction of emotional distress claim).  The
2  Court therefore GRANTS Defendants' Motion as to this
3  claim.

4

5  **K.   Plaintiffs' "Bane Act" Claim**

6       In their FAC, Plaintiffs' Eleventh Claim for Relief
7  is for "Violation of Bane Act (Cal. Civil Code § 51.7 and
8  California Common Law)."  (FAC at 19:7-10.)  The Bane Act
9  is not codified in Section 51.7, however; it is found in
10 Section 52.1.  See Venegas v. Cnty. of L.A., 32 Cal. 4th
11 820, 845-46 (2004) (Baxter, J. concurring) (discussing
12 the history and enactment of Sections 51.7 ("Ralph Civil
13 Rights Act") and 52.1 ("Tom Bane Civil Rights Act")).  In
14 both Defendants' Motion and Plaintiffs' Opposition, the
15 parties dispute whether Plaintiffs have satisfied the
16 requirements of Section 51.7; neither side discusses
17 Section 52.1.  (See Mot. at 30-31; Opp'n at 29-30.)
18 Additionally, Defendants' Motion quoted Section 51.7 in
19 their argument (see Mot. at 31); if this were not the
20 statute Plaintiffs intended to rely upon as the basis for
21 their claim, it stands to reason they would have pointed
22 that out in their Opposition.  Finally, in arguing
23 against Defendants' Motion, Plaintiffs' Opposition cites
24 to Section 51(e)(1), which is relevant for purposes of
25 Section 51.7 (as discussed below), but not for Section

26
27
28

52.1.[17]  Accordingly, the Court construes Plaintiffs' Eleventh Claim as one brought under Section 51.7, not Section 52.1.

Section 51.7 provides that:

> All persons within the jurisdiction of this state have the right to be free from any violence, or intimidation by threat of violence, committed against their persons or property because of political affiliation, or on account of any characteristic listed or defined in subdivision (b) or (e) of Section 51, or position in a labor dispute, or because another person perceives them to have one or more of those characteristics.

Cal. Civ. Code § 51.7(a).  Subdivision (e) of Section 51 includes persons with "any mental or physical disability as defined in Sections 12926 and 12926.1 of the Government Code."  Cal. Civ. Code § 51(e)(1).  In turn, section 12926 of the Government Code, defines "mental disability" as having any mental condition that limits a major life activity.  Cal. Gov. Code § 12926(j)(1). Defendants contend Plaintiffs offer no evidence that Decedent falls within the definition of a person with a protected characteristic.  (Mot. at 31.)  Defendants are correct.

---

[17]  Unlike Section 51.7, Section 52.1 does not require a plaintiff to possess a protected characteristic; "it applies to an affected plaintiff without regard to his or her membership in a protected class."  <u>Venegas</u>, 32 Cal. 4th at 842 (citation omitted).

1    The parties do not dispute that on the day of the

2    incident Decedent was "disturbed."  (See SUF ¶ 3; SGI

3    ¶ 3.)  Plaintiffs offer no evidence, however, that

4    Decedent suffered from a mental disability that limited a

5    major life activity, as defined in section 12926(j)(1).

6    Thus, Plaintiffs have not satisfied the standard under

7    Section 51(e)(1), and by implication, that Decedent had a

8    protected characteristic under Section 51.7.  The Court

9    therefore GRANTS Defendants' Motion as to this claim.

10

11                     **V. CONCLUSION**

12    For the foregoing reasons, the Court GRANTS

13    Defendants' Motion for Summary Judgment, and DISMISSES

14    the FAC WITH PREJUDICE.

15

16    Dated:  March 30, 2012

17                          VIRGINIA A. PHILLIPS
                       United States District Judge

18

19

20

21

22

23

24

25

26

27

28